**UNITED STATES, Appellee,**

v.

**Steven A. WEAN, Staff Sergeant
U.S. Army, Appellant.**

No. 67377.
Crim.App. No. 9002749.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 5, 1996.

Decided Jan. 22, 1997.

For Appellant: *Captain Eric S. Krauss* (argued); *Colonel John T. Phelps II* and *Major J. Frank Burnette* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* and *Lieutenant Colonel Eva M. Novak* (on brief).

*Opinion of the Court*

COX, Chief Judge:

Appellant was tried by a general court-martial composed of officer members at Fort Ord, California, on October 15 and 17-19, 1990. Contrary to his pleas, he was convicted of committing indecent acts with a child under the age of 16 (3 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement for 14 years, total forfeitures, and reduction to E-1. The convening authority approved the adjudged sentence. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted four issues for review.[1] We resolve this case on the first granted issue and reverse the decision of the Court of Criminal Appeals.

## DISCUSSION

This case has a long appellate history. Six years have passed since appellant's original trial. This lengthy period of time has been consumed by several trips back and forth between the appellate courts. In our initial decision on August 3, 1993, we remanded the case for additional factfinding in order to facilitate our consideration of appellant's claim of ineffective assistance of counsel. *United States v. Wean,* 37 MJ 286 (CMA 1993). On June 7, 1994, the then-Court of Military Review[2] ordered the original trial defense counsels to answer four specific questions posed by this Court in our remand opinion.[3] On August 3, 1994, after realizing that trial defense counsels' answers, combined with the record of trial, did not resolve the issues, the Court of Military Review ordered a limited hearing in lieu of additional affidavits pursuant to *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967). *See* Appendix A.

Specific findings of fact and conclusions of law were made by the military judge who presided over the *DuBay* hearing. *See* Appendix B. After considering all of the evidence adduced at the *DuBay* hearing, as well as the entire record of trial, the military

1. The following issues were granted:

I

WHETHER STAFF SERGEANT WEAN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON THE MERITS BECAUSE DEFENSE COUNSEL FAILED TO INVESTIGATE APPELLANT'S CASE AND ADEQUATELY PRESENT APPELLANT'S DEFENSES AT TRIAL.

II

WHETHER STAFF SERGEANT WEAN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON THE MERITS BECAUSE DEFENSE COUNSEL'S CLOSING ARGUMENT ON SENTENCING INCLUDED IRRATIONAL ASSERTIONS SUBSTANTIALLY PREJUDICIAL TO STAFF SERGEANT WEAN.

III

WHETHER THE MILITARY JUDGE ERRED IN ADMITTING THE OPINION TESTIMONY OF THE GOVERNMENT'S EXPERT WITNESSES ABSENT A SHOWING THAT THE UNDERLYING THERAPY TECHNIQUES THEY RELIED UPON IN REACHING THEIR CONCLUSIONS WERE RELIABLE.

IV

WHETHER THE ARMY COURT DECISION SHOULD BE REVERSED BECAUSE THAT COURT ABUSED ITS DISCRETION BY REJECTING THE FINDINGS OF THE EVIDEN-

TIARY HEARING AND THE GOVERNMENT CONCESSION WITHOUT A LEGITIMATE RATIONALE, AND BY FAILING TO ADDRESS THE ISSUES OF INEFFECTIVE ASSISTANCE OF COUNSEL IN ACCORDANCE WITH THIS COURT'S DECISION IN *UNITED STATES V. WEAN,* 37 MJ 286 (CMA 1993).

2. *See* 41 MJ 213, 229 n. * (1994).

3. The four questions posed by this Court are as follows:

(1) "[W]hat were the reasons that defense counsel failed to object to admission of 'play therapy' evidence used by government witnesses in this case to conclude that a child had been sexually abused?"

(2) "[W]hat were the reasons that defense counsel failed to request funds for or the services of an expert witness in the preparation of appellant's defense?"

(3) "[W]hat were the reasons for defense counsel's statement during closing argument on sentencing 'that an illness of the mind then compelled [appellant] to do these things?' "

(4) "[D]oes defense counsel's post-trial affidavit adequately address appellant's claim that defense counsel ignored his alibi defense and failed to call a potential key witness?"

*United States v. Wean,* 37 MJ at 288.

judge concluded that "the defense representation of appellant was clearly deficient," that this deficient representation "involved the essential issues in the case," and that it had a "clear prejudicial impact" on appellant's right to a fair trial. Appendix B at 9. In affirming appellant's convictions in an unpublished opinion, however, the court below rejected most of the military judge's findings of fact and his entire conclusions of law.

■ It is well-established that a determination regarding the effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); S. Childress and M. Davis, 2 Federal Standards of Review § 12.09 at 62–63 (2d ed.1992). Therefore, the factual findings of the military judge are reviewed under a clearly-erroneous standard, and the ultimate determinations whether the representation was ineffective and, if so, whether it was prejudicial are reviewed *de novo. Buenoano v. Singletary,* 74 F.3d 1078, 1083 (11th Cir. 1996), citing *United States v. Camacho,* 40 F.3d 349, 353 (11th Cir.1994); *see Oliver v. Wainwright,* 782 F.2d 1521, 1524 (11th Cir. 1986). The test for ineffective assistance of counsel is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland, supra* at 687, 104 S.Ct. at 2064; *United States v. Ingham,* 42 MJ 218, 223 (1995).

■ The *DuBay* judge found several facts which he used as the basis for his conclusion that the assistance of counsel in this case was ineffective. *See* Appendix B. Reviewing these facts under a clearly erroneous standard, we conclude that they are well-supported by the record of trial, and therefore we accept all of these factual findings for purposes of our analysis. Also, we necessarily defer to the *DuBay* judge's determinations of credibility in this regard. *See United States v. Williams,* 37 MJ 352, 357 (CMA 1993); *United States v. White,* 36 MJ 284, 287 (CMA 1993). Our task here is greatly facilitated by the high quality of the *DuBay* record.

Therefore, we turn to the *de novo* portion of our review and decide whether these facts support a finding of deficiency, and if so, whether this deficiency rises to the level of prejudice.

■ The Court of Criminal Appeals held that the *DuBay* judge erred in his findings that "the defense representation on behalf of the appellant ... 'involved essential issues in the case,'" and was "clearly deficient." Unpub. op. at 6–7 n. 3 and 10–11. *United States v. Wean, supra* at 6–7 n. 3 and 10–11. We disagree with the lower court and concur with the *DuBay* judge's finding that counsel's performance was "clearly deficient" in at least three particulars. First, defense counsel's approach to the use of expert witnesses by the Government, coupled with his omission in not using expert testimony, demonstrated a lack of understanding of the law and a failure to properly research and investigate appellant's case. Second, the division of responsibilities between the civilian defense counsel and detailed military counsel was at the "heart of the defense problem in representing the appellant.... [T]here was essentially no discussion between the two regarding the issues, the law, or the case methodology appropriate for the representation of the appellant." Third, civilian defense counsel inappropriately made a comment during the sentencing argument that appellant was suffering from "an illness of the mind [which] compelled him to do these things," with absolutely no basis in fact for the comment. This comment was directly contrary to appellant's insistence upon his innocence.

■ We thus turn to the second prong of the *Strickland* test to consider whether ap-

pellant was prejudiced by the deficient performance. Prejudice occurs when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra* at 694, 104 S.Ct. at 2068. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696, 104 S.Ct. at 2068.

Unlike the Court of Criminal Appeals, we find that prejudice is apparent from the *DuBay* record itself. Here, appellant denied guilt all along and continues to do so. The case against him consisted of untested theories of "play therapy" and hearsay statements, which were barely contested at trial by appellant's counsel. The physical evidence did not conclusively point to appellant. Assuming *arguendo* that the children were sexually abused, other individuals besides appellant also had access to them. The initial identification of appellant was made by only one child in this case, and was suggested to the other children by questions such as, "[Did] Steven play[ ] any games where he touched [you]?" In other words, the entire case against appellant consisted of hearsay testimony admitted under various exceptions.

It is certain from this fact alone that if defense counsel had attacked admissibility of the underlying theories of the government experts' opinions and had interviewed any of appellant's proposed witnesses, they would have at least altered the landscape of the trial. Moreover, in general, when an accused has consistently denied guilt, a functional defense counsel should not concede an accused's guilt during sentencing, not only because this can serve to anger the panel members, but also because defense counsel may be able to argue for reconsideration of the findings before announcement of the sentence.[4] The tenor of civilian defense counsel's responses to the *DuBay* judge's inquiries was such that it was clear the deficiencies in his performance were not due to tactical decisions but, rather, were due to his failure to investigate, prepare, and research. *See United States v. Scott,* 24 MJ 186 (CMA 1987). As a matter of law, the result of this trial was unreliable.

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside, and the record of trial is returned to the Judge Advocate General of the Army, who may return it to an appropriate convening authority to order a rehearing, or if a rehearing is impractical, to dismiss the charges against appellant. Art. 67(e), UCMJ, 10 USC § 867(e) (1994).

Judges CRAWFORD, GIERKE, and EFFRON concur.

SULLIVAN, Judge (concurring):

I concur. *See United States v. Scott,* 24 MJ 186, 193–94 (CMA 1987) (Sullivan, J., concurring in part and dissenting in part).

---

4. At the time of appellant's trial, members were allowed to reconsider findings of guilty reached by them at any time before announcement of the sentence. RCM 924(a), Manual for Courts–Martial, United States (1994 ed.). Currently, however, only the military judge is allowed to reconsider findings before sentence is announced. Members may only reconsider findings up to the point when findings are announced. RCM 924(a), Manual, *supra* (1995 ed.); *see* Drafters' Analysis of RCM 924, Manual, *supra* (1995 ed.) at A21–66.

A P P E N D I X   A

UNITED STATES ARMY COURT OF MILITARY REVIEW

Before
GRAVELLE, JOHNSTON, and BAKER
Appellate Military Judges

| | |
|---|---|
| UNITED STATES, Appellee | ) ACMR 9002749 |
| | ) |
| v. | ) |
| | ) |
| Staff Sergeant STEVEN A. WEAN, | ) |
| 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, | ) |
| United States Army, Appellant | ) |

O R D E R

WHEREAS the United States Court of Military Appeals returned the record of trial in the case of *United States v. Wean*, 37 M.J. 286 (C.M.A. 1993) to The Judge Advocate General for remand to the Army Court of Military Review; and,

WHEREAS the United States Court of Military Appeals requires answers to certain factual questions that were not clear from the record of trial; and,

WHEREAS neither the appellate defense counsel, appellate government counsel, nor Mr. Stanley Evans (the civilian trial defense counsel) have been able to provide this court with sufficient information necessary to resolve the questions of fact to which the Court of Military Appeals requires answers.

NOW THEREFORE, IT IS ORDERED:

That the record of trial be returned to The Judge Advocate General for such action as is required to conduct a limited hearing pursuant to *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). At the hearing the military judge will receive all available evidence in order to make specific findings of fact concerning, but not limited to, the following issues:

1. What were the reasons that defense counsel failed to object to admission of "play therapy" evidence used by government witnesses in this case to conclude that a child had been sexually abused?

2. What were the reasons that defense counsel failed to request funds for or the services of an expert witness in the preparation of the appellant's defense?

     a.   Was the appellant prejudiced by the absence of the proposed defense expert?

     b.   What information would the proposed defense expert have been able to provide?

     c.   When did Mr. Evans inform the military trial defense counsel that there was a local expert witness whom Mr. Evans wished to retain?

     d.   What exactly was the military defense counsel's response to Mr. Evans?

     e.   If the military defense counsel did respond by stating that the "military would not pay" for the proposed expert, on what did the military defense counsel base his assumption?

     f.   Who on the defense team made the decision not to request that the government provide funds for the proposed expert?

    3.   What were the reasons for defense counsel's statement during closing argument on sentencing "that an illness of the mind then compelled [appellant] to do these things"?

    4.   Does defense counsel's post-trial affidavit adequately address appellant's claim that defense counsel ignored his alibi defense and failed to call a potential key witness?

     a.   What alibi witnesses, if any, were requested by the appellant?

     b.   If alibi witnesses were requested by the appellant, when was this request made?

     c.   If alibi witnesses were requested by the appellant, why were they not called to testify?

     d.   Would the testimony of the alleged alibi witnesses have raised a viable alibi defense?

    The military judge will ensure that Mr. Stanley Evans is served a copy of the original record of trial, in order to refresh his memory, prior to the start of the proceedings.

    The military judge will permit the presentation of witnesses and evidence, make rulings as appropriate, and enter findings of fact and conclusions of law with respect to the above questions.

WEAN – ACMR 9002749

At the conclusion of the proceedings, the record, with an authenticated verbatim transcript of the hearing, will be returned to The Judge Advocate General for further review by this Court.

Date:   3 August 1994

FOR THE COURT:

WILLIAM S. FULTON, JR.
Clerk of Court

CF:   JALS-DA      JALS-CR2
      JALS-GA      JALS-CR3
      JALS-CRZ     JALS-CR4
      JALS-CCZ     JALS-CCR

A P P E N D I X  Æ

# DUBAY HEARING

NAME   WEAN, Steven A.

SSN   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

HEARING DATE   26 Oct 94, 14-15 Dec 94, 11 Apr 95

RETURN THIS FILE TO CLERK OF COURT
(JALS-CC)
US ARMY JUDICIARY
NASSIF BLDG, FALLS CHURCH, VA
22041-5013

RECEIVED
US ARMY JUDICIARY
MAY 30  12 09 PM '95
COURT

VOL __1__ OF __2__ VOL(S)

9002749

ORIGINAL

UNITED STATES     )
           )  ACMR 9002749·
  v.        )  Findings & ·Conclusions
           )  DuBay Hearing
           )
STAFF SERGEANT STEVEN A. WEAN )
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

In his post-trial affidavit, Mr. Evans made repeated comments that he was unable to answer questions adequately because he had never been provided a copy of the record of trial. Pursuant to the instructions of the Court, the military judge directed the government counsel to provide a copy of the record of trial to Mr. Evans. During a docketing session, the government counsel advised the military judge that he had contacted Mr. Evans, and had been advised by Mr. Evans· that as soon as he received the record and had gone through it, he would be able to provide a date of availability for travel to Fort Leavenworth to testify. The government counsel later confirmed that Mr. Evans had received the record of trial.

During the hearing, Mr. Evans had significant difficulty remembering what had happened at trial. Finally, he was asked the essential pointed questions by counsel for the appellant as set forth immediately below. The responses by Mr. Evans appear to set the tone for all other answers during the hearing and exemplify the standard for all his actions during the original trial.

  AC: Now, you've· received a copy of the record of trial, is that correct?

  CDC: I have received it, yes.

  AC: Okay, did you review it before you came today?

  CDC: I didn't.

  AC: You didn't even read it?

  CDC: No.  (R. 216)

The· following ·findings/comments/conclusions are keyed to the court's questions in its order of 3 August 1994.

■

Re.: Ques #1: In response to questions from counsel for the government and counsel for appellant, the CDC repeatedly stated that he in fact did object to the play therapy testimony. It became evident that he really did not understand the question asked by the Court or by counsel. The CDC believed his continual objections based on hearsay, during the Art 39a portion of the court-martial, were the appropriate objections to be made. At the DuBay hearing the military judge finally told the CDC that while it was understood that he had made a hearsay objection, he in fact had not objected to the basic substance of and scientific basis for the testimony in question. Once satisfied that the CDC understood the question, the military judge again addressed the issue of why no objection had been raised. The final response was "I don't know."

Re: question #2: The CDC had difficulty understanding this question as well. He first testified that he had consulted with an expert. However, the expert in question was one who dealt with pediatric injuries. When confronted with the question of why he did not request funds for an expert on the primary issue, he first testified that he was not sure he needed one. Later he testified that looking back, it probably would have been a good idea.

Re: ques 2a. Just reading the record of trial, the presence of three experts for the government and none for the defense raised an apparent prejudice in the eyes of this judge. Having reviewed the submission by the proposed expert as well as the trial testimony of the government experts, the court finds that the defense was clearly prejudiced by the absence of a qualified expert.

Re: ques 2b.: The defense expert would have provided significant information which questioned the objectivity of all three government experts, and most importantly that of Mrs. Babbitt, the primary government expert at the Article 32b hearing. Mrs. Babbitt's credentials as an expert in child abuse assessment also would have come into question. The expert would have led the defense to raise the issue of whether play therapy is a valid forensic tool at all; and raised the question of the significant absence of scientific data to support not only play therapy, but also the basis behind most of the other conclusions drawn by the experts.[1]

---

[1] As a matter of information, despite its diligent efforts, the government was unable to produce medical records regarding the victims or notes created by and relied upon by the government experts. The government was also unable to produce any additional Military Police reports or determine if any such reports had been generated in addition to the CID Report.

∎

 

Re: quest 2c: The exact date of the discussion between Mr Evans and the detailed defense counsel was not known. Both agreed that it was well before trial.

Re: ques 2d: The military counsel responded that while they would be able to get an expert at government expense, they probably would not get the specific named expert mentioned.

Re: ques 2e. The military defense counsel based his response on experience in the command. He had found that similar requests for named experts were routinely denied, and reasonable substitutes were provided. He further testified that much to the chagrin of the command, later in his tour he overcame much of the command "obstinacy" by requesting the reasonable substitutes by name, as he had been satisfied with their assistance.

Re: ques 2f. The answer to this question goes to the heart of the defense problem in representing the appellant. The CDC and the military trial defense counsel split the responsibilities on the case. The CDC had full responsibility for all matters dealing with the allegations of child sex abuse. The military defense counsel had responsibilities dealing with the remaining offenses in the case. According to both counsel, there was essentially no discussion between the two regarding the issues, the law, or the case methodology appropriate for the representation of the appellant. The only discussion remembered was that regarding the expert witness. Once Mr. Evans was told he probably would not get the named expert, he apparently decided to go no further. After listening to both counsel, the military judge finds that while the military defense counsel gave a correct response to Mr. Evans, it is apparent that Mr. Evans did not fully understand it. Mr. Evans appears not to have understood that he could still make the request. More importantly, Mr. Evans appears not to have understood that an appropriate expert would have been provided, albeit, possibly not the named expert he had mentioned to Captain Bare. Aside from the one question to Captain Bare, the issue of an expert for the defense was never raised again between counsel, primarily because the matter dealt with the portion of the case being handled solely by Mr. Evans. Thus, if it can be said that any decision was made at all not to request funds, it would have to be found that Mr. Evans made such a decision. The court again notes however, that despite what Mr. Evans had been told by Captain Bare, it appears that he still did not understand that such a request could be made.

The CDC's lack of full understanding of the issues involved in the case was further shown in response to several questions regarding his trial tactics. He testified that he did not attempt to question the children prior to trial because they were too young. He testified that he did not attempt to question the parents of the victims prior to trial because they were set in their ways. And, he testified that he did not attempt to question the government experts prior to trial because he already had heard the expert testimony at the Article 32 investigation hearing which he had "won." The appellant's counsel reminded the CDC that only one expert testified at the Article 32 hearing but that three experts had testified at the court-martial. The appellant's counsel proceeded to ask why Mr. Evans had not attempted to question at least the two new experts. Mr. Evans really had no response to this question except to go back to his theory that anything any expert said was going to be based on hearsay. As his arguments regarding hearsay were sufficient for the Article 32, he really saw no need to do anything else.

Re: ques 3: The CDC testified that he had absolutely no basis for the "illness" comment during his sentencing argument. He testified that it just sort of flowed with the rest of his argument.: Captain Bare testified that he was shocked by the comment because throughout the entire case there had never been any wavering of the appellant's position that he was not guilty. Further, Captain Bare perceived this statement as tantamount to an admission by counsel that the accused was in fact guilty.

Re: Ques 4: No. As noted above, Captain Bare was completely removed from Charge I and its specifications. Testimony from both counsel and from Mrs. Wean further confirmed this. Mrs. Wean testified that she brought a long list of witnesses to Mr. Evans personally well prior to trial. This included the name of a key alibi witness.

Re: ques 4a: The alibi witness included on the witness list was Mrs. Julie Price a very close neighbor of the Weans.

 

Re: ques 4c: Mr. Evans gave several different answers to this question:

1)  Because this was a one-on-one allegation against the appellant, it was <u>impossible</u> for there to be an alibi witness.  AND/OR

2)  Based on the results of the Article 32 investigation, and the fact that the entire case was based on hearsay, an alibi witness, if available, would not be needed. AND/OR

3)  He never read the list provided by Mrs. Wean and thus did not interview anyone on the list.  His varying rationale for this particular inaction was threefold:

(a)  First, he again testified that there was no basis for him to look for an alibi witness in light of the nature of the crime;

(b)  Second, as the case was based solely on hearsay and as the case had been won at the Article 32 level initially, there was no need to even consider the possibility of an alibi witness; and

(c)  Finally, Mr. Evans testified that Sergeant Wean was his client, not Mrs. Wean.  Therefore, he had no reason to do anything with a list she gave him because she was not his client.

Re: ques 4d: Yes.  Mrs. Price was a very credible witness. The nature of her status as an alibi witness results from her constant presence in the Wean home from approximately 0730 until at least 1800 hours Monday through Friday.  She testified that when she arrived two children (one of the victims -- Kristan) usually already were there; a second victim, Tiffany, usually came after she arrived, but at times was there ahead of her; and the third victim Christine always arrived after she did.  Mrs. Price further testified that she was always at the house when all

three victims left, and it was not uncommon for her to stay, with her infant son, well into the evening. Mrs. Price testified that during the day she talked with and assisted Mrs. Wean in caring for the children. She testified that it was very rare for the appellant to be home during the day, but that sometimes he would come in during the late afternoon to change and immediately leave for Physical Training. On occasions she witnessed interaction between the appellant and the victims. Mrs. Price testified that this interaction was always friendly and the children appeared to like the appellant. Mrs. Price also testified that she never saw the appellant alone with the children, and in fact he pretty much stayed out of the house while they were there. Further she testified that in assisting Mrs. Wean there were times when she went with Mrs. Wean and the children to run errands. She would remain in the car with the children while Mrs. Wean completed the errands. Mrs. Price also testified that she did provide a statement to an attorney in support of the appellant. A review of the record of trial revealed that this statement was provided for the defense post trial submission pursuant to R.C.M. 1105/1106. No one asked her for any formal statement prior to trial.

Mrs. Price's credibility rests significantly on the basis of why she, as an outsider, would spend so much time in the Wean household. The court found the following factors of great significance:

Mrs. Price was twenty-one years old at the time and had a new baby (her first).

Mrs. Price was new to the Army, and her PFC husband was often working late hours as a flight crew member.

Mrs. Price came from a fairly affluent family but now was living in a home significantly smaller than she was used to, had no phone, and other than the Weans, really no friends.

Mrs. Price had attended one year of college, but attended a local college near home and lived with her parents at the time.

For all intents and purposes, Mrs. Price had never been away from home before she arrived at Fort Ord to join her husband.

Mrs. Wean is approximately 15 years older than Mrs. Price, and Mrs. Price looked upon her as a big sister, and perhaps even as a substitute mother to help her through her transition.

It was apparent that Mrs. Price felt very comfortable in the Wean home as noted from the following colloquy between the Military Judge and Mrs. Price (R. 114):

MJ: And who answered the phone? Did you answer the phone at their house?

Mrs. Price: Sometimes, yes.

MJ: .... Did you go to the refrigerator at their house?

Mrs. Price: Yes I did. Yes.

MJ: And then the next question doesn't need any answer. I presume you didn't have to ask to use the bathroom.

Mrs. Price: No, sir.

Although Mrs. Price was not in the Wean home 100% of the time, her presence was so common and significant, and her daily contact with the children so routine, that she would have to be considered an alibi witness. She never saw the appellant alone with the children; she rarely even saw the appellant at the house. She would have testified that the minimal contacts he had with the children appeared quite pleasant and no one seemed scared of him at all. Had this information come before the court-martial, it would have raised an alibi in that Mrs. Price was a disinterested observer who was present in the house daily during the time during which the alleged abuse occurred and would have testified that the appellant was for all intents and purposes, never there with the children.

Having reviewed the record of trial and the record of the DuBay hearing, the court finds:

a. That Mr. Evans did not understand nor did he even attempt to understand the true nature of the issues and potential defenses in the case; as well as the assets available to him, at government expense, to assist in preparing the defense;

b. That Mr. Evans based his courtroom presentation entirely on his initial determination that his argument against hearsay evidence at the Article 32 investigation had swayed the investigating officer and therefore, it would sway the court-martial as well.

c. That Mr. Evans continued with this approach despite the fact that the command had specifically ignored the recommendations of the Article 32 investigating officer and referred the charges to a general court-martial.

d. That Mr. Evans failed to question essential witnesses and in particular, the government experts prior to trial.

e. That Mr. Evans never sought the necessary and available expertise to understand the nature of the government's expert testimony and to learn how to question the government experts once he got to trial.

f. That Mr. Evans ignored essential evidence presented to him by Mrs. Wean regarding a potential alibi witness, and did so only because he received it from her and not the appellant, and because she (Mrs. Wean) was not his client.

g. That Mr. Evans argued for a light sentence by claiming the appellant was suffering from a mental disease when there was absolutely no basis for such an argument.

h. That the split of the case responsibility between Mr. Evans and Captain Bare resulted in Captain Bare's complete ignorance of essential defense matters which he would have pursued had he been properly and fully involved in the defense.

The court further finds that the collective failings and inactions by Mr. Evans and Captain Bare resulted in representation of the appellant that was lacking in legal knowledge, skill, thoroughness, and preparation. The court therefore concludes, as a matter of law, that the defense representation of the appellant was clearly deficient. Further, the court finds that this deficient representation involved the essential issues in the case. As such, the court concludes as a matter of law that said deficient representation had a clear prejudicial impact on the appellant's original court-martial in that "there is a reasonable probability that (absent the multitude of errors and omissions regarding the essential issues in the case) ... the factfinder would have had a reasonable doubt respecting guilt." United States v. Scott, 24 M.J. 186 (CMA 1987) citing Strickland v. Washington, 466 US 688, 695 (1984).

GREGORY O. VARO
Colonel, USA
Military Judge