# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class AMANDA N. MOSS**
**United States Army, Appellant**

ARMY 20110337

Headquarters, 3d Infantry Division and Fort Stewart
Tiernan P. Dolan, Military Judge
Colonel Jonathan C. Guden, Staff Judge Advocate (pre-trial)
Colonel Randall J. Bagwell, Staff Judge Advocate (post-trial)

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Ian M. Guy, JA (on brief & supplemental brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Captain Steve T. Nam, JA (on brief)

17 January 2013

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MARTIN, Judge:

A panel of officers sitting as a special court-martial convicted appellant, in absentia, of desertion in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885 (2006) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, confinement for six months, forfeiture of $978.00 pay per month for 12 months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited the appellant with eighteen days of confinement against the sentence to confinement. Appellant's case is now before us for review pursuant to Article 66, UCMJ.

This case involves the propriety of giving an unsworn statement on behalf of an accused being tried in absentia. Appellate defense counsel raise a total of four assignments of error related to the unsworn statement given by appellant's trial

defense counsel during presentencing. Primarily, appellate defense counsel claim that appellant was denied her Sixth Amendment right to effective assistance of counsel, due to both the decision to give an unsworn statement and the content of the statement given. Our resolution of this issue obviates the need to address the additional allegations raised as assignments of error.[1]

## BACKGROUND

*Trial and Post-Trial Proceedings*

After being absent for almost three years, appellant was apprehended and returned to her unit at Fort Stewart, Georgia. Upon her return to military control, appellant made several sworn and unsworn statements regarding the mitigating reasons for her long absence. Captain (CPT) AS was appellant's assigned defense counsel, and he worked with PFC Moss to prepare for her pending court-martial. Approximately two weeks before her scheduled trial date, appellant again absented herself from her unit. The court-martial then proceeded in her absence. After appellant was convicted of desertion, CPT AS read an unsworn statement to the panel on appellant's behalf during presentencing. The unsworn statement focused almost exclusively on the reasons why appellant was absent from her unit for almost three years. Reading the statement in the first person, CPT AS stated that appellant left in order to care for her "aunt," Ms. VM, who had essentially raised appellant and was suffering from various serious physical illnesses and mental health issues making her unable to care for herself.

In rebuttal, the government called appellant's father, Sergeant First Class (SFC) DM. Sergeant First Class DM testified that neither he nor his wife had a sister named Ms. VM and that he and his wife had raised appellant. On cross-examination, SFC DM admitted that he had heard of situations where close family friends were sometimes referred to as an "aunt," but also testified that he was not aware of a close family friend named Ms. VM.

---

[1] We find the additional assignments of error—that the military judge abused his discretion by allowing the unsworn statement, that the military judge erred by not instructing the jury to disregard the unsworn statement (and related rebuttal testimony), and that appellant was deprived of her right to conflict-free counsel when her trial defense counsel subsequently invoked his Fifth Amendment rights after being questioned by the military judge about the unsworn statement—to be without merit.

During their presentencing argument, both government counsel and CPT AS referenced Ms. VM. The trial counsel argued that appellant invented the story about having an "aunt" named Ms. VM to reduce her culpability. The trial counsel further argued that the testimony from appellant's father, SFC DM, demonstrated that appellant's explanation for being absent was false. Despite SFC DM's testimony to the contrary, CPT AS argued that, while not excused, appellant's absence was mitigated by her actions to care for her ailing, beloved aunt. Captain AS repeated this theme in appellant's post-trial matters to the convening authority, requesting clemency on appellant's behalf.

*Appellate Proceedings*

Before this court, appellate defense counsel argue, *inter alia*, that the record does not contain any evidence that CPT AS was authorized to provide an unsworn statement on appellant's behalf. Furthermore, appellate defense counsel aver that the content of the unsworn statement—regarding the existence of Ms. VM, which was rebutted by appellant's father—indicates CPT AS did not adequately investigate appellant's presentencing case. Appellant did not file a supporting affidavit.

After reviewing the record and appellate defense counsel's allegations of ineffectiveness, this court concluded that appellant's allegations, "if unrebutted, would overcome the presumption of competence" of defense counsel. *United States v. Lewis*, 42 M.J. 1, 6 (C.A.A.F. 1995). Consequently, we ordered CPT AS to provide an affidavit addressing whether or not appellant authorized him to make an unsworn statement on her behalf prior to her absence at the court-martial. We also directed CPT AS to detail his investigation regarding Ms. VM; to describe any interviews conducted with appellant's father, SFC DM; and to discuss the reasons he decided upon the content and use of the unsworn statement, especially in light of SFC DM's disavowal of any person named Ms. VM.

In response to this court's order, CPT AS provided an affidavit and numerous supporting documents, to include witness interview notes, a memorandum for record, and supporting emails. In his affidavit, CPT AS stated that he and appellant "extensively discussed presenting an unsworn statement at trial," and that the "chief evidence PFC Moss desired to present in extenuation and mitigation was the reason for which she was absent during the duration alleged in the charged offense— namely, that she was caring for Ms. [VM], to whom she referred as her aunt, and who was seriously ill." This was the same explanation for her absence that she had previously provided upon her return to military control, and was consistent with statements she made to her command. Captain AS further stated that appellant "was insistent in presenting this evidence, and wanted to do so in large part through an unsworn statement," which appellant practiced with CPT AS.

3

Captain AS also stated that he confirmed the existence of Ms. VM, primarily through a separate witness, Ms. DC, who was very close to both appellant and Ms. VM. "Ms. [DC] confirmed the story and further described the infirmities of Ms. [VM], whom she knew personally, as well as the relationship between PFC Moss and Ms. [VM]." Captain AS was unable to reach Ms. VM personally. In the days before trial, however, CPT AS received further confirmation of the existence and condition of Ms. VM through government counsel. Pursuant to the request for defense witnesses, government counsel worked with the federal marshals to secure the presence of both Ms. DC and Ms. VM at the court-martial. The federal marshals' investigation revealed that, in fact, Ms. VM did exist and that she suffered from severe physical and mental health conditions. While confirming her existence, the federal marshals were unable to locate and serve a subpoena on Ms. VM prior to trial.

Finally, CPT AS stated that he interviewed appellant's father, SFC DM, and questioned him about Ms. VM. During CPT AS's interview of him, SFC DM, consistent with his later sworn testimony, professed no knowledge of any person named Ms. VM. Despite this fact, Captain AS nonetheless decided to use the evidence: "The evidence regarding PFC Moss caring for Ms. [VM] was the strongest extenuation and mitigation evidence that was presented at trial, and I did not and do not feel that SFC [DM]'s testimony denying knowledge of Ms. [VM] outweighed it to the degree that I should decline to argue it to the panel in my presentencing argument." Furthermore, during his pre-trial witness interview, SFC DM admitted to CPT AS that during different periods of her life, he had lost contact with his daughter.

## LAW AND DISCUSSION

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), set out a two-prong test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. *See United States v. Green*, 68 M.J. 360 (C.A.A.F. 2010); *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997); *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

In analyzing CPT AS's performance in the case at hand, we have before us the record of trial, and CPT AS's affidavit with supporting documents—this is not a case of competing affidavits. *See United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Although our initial review of the record of trial and appellant's assignments of error raised concerns that CPT AS's performance was inadequate, upon examination of CPT AS's affidavit and supporting information, we do not find defense counsel's performance deficient under the first prong of *Strickland*.

*Decision to Provide an Unsworn Statement on Appellant's Behalf*

In *United States v. Marcum*, our superior concluded the "decision to make an unsworn statement is personal to the accused." *United States v. Marcum*, 60 M.J. 198, 209 (C.A.A.F. 2004). The court further explained that "if an accused is absent without leave his right to make an unsworn statement is forfeited unless prior to his absence he authorized his counsel to make a specific statement on his behalf." *Id.* at 210. Indeed, there are several pitfalls involved with giving an unsworn statement when a client is not present for trial. *See, e.g.*, *Id.* at 209 (holding that the defense counsel's unsworn statement rendered on the appellant's behalf disclosed confidential communications and constituted deficient performance); *United States v. Brewer*, ARMY 20040625, 2008 WL 8104044, at *3 n.2 (Army Ct. Crim. App. 28 Aug. 2008) (finding that the defense counsel's use of a draft unsworn statement on the appellant's behalf was without appellant's express consent and therefore erroneous).

In this case, CPT AS's affidavit and notes convince us that CPT AS did not err by providing an unsworn statement. Instead, we find that appellant impliedly consented to CPT AS giving an unsworn statement on her behalf. Captain AS and appellant discussed the contents of the unsworn statement, appellant's desire to give an unsworn statement, and they even practiced delivering an unsworn statement. Additionally, the close proximity of what turned out to be the last pre-trial preparation meeting—fifteen days before the date of the original trial date—reflects the fact that the parties were in the final stages of trial preparation. Therefore, we conclude that CPT AS was not deficient in giving an unsworn statement on appellant's behalf.

*Decision to Use Mitigating Facts Regarding Ms. VM*

Next, we review CPT AS's decision regarding the contents of the unsworn statement he ultimately delivered. Initially, we note that, unlike the unsworn statement delivered by the counsel in *Marcum*, there was no disclosure of confidential communications in this case. All the information provided by CPT AS in the unsworn statement essentially reflected previous sworn statements appellant provided to her unit upon her return to military control. Thus, the issue is simply

whether CPT AS was ineffective in deciding what information to include in the unsworn statement. "In weighing such matters, we must give deference to counsel's tactical judgment and not substitute our view with the benefit of hindsight." *United States v. Stephenson*, 33 M.J. 79, 82 (C.M.A. 1991) (quoting *United States v. Bono*, 26 M.J. 240, 242 (C.M.A. 1988) (citing *Strickland*, 466 U.S. at 689; *United States v. DeCoster*, 624 F.2d 196, 208 (D.C. Cir. 1976) (en banc) (plurality opinion))). Moreover, "heavy deference is given to trial defense counsel's judgments, and this Court presumes counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citing *Strickland*, 466 U.S. at 689).

Before this court, appellate defense counsel claim that CPT AS's performance fell below an objective standard of reasonableness when he argued that appellant's absence was mitigated by her care of her ailing "aunt," Ms. VM, and persisted with this argument after rebuttal testimony by SFC DM that the family did not have an aunt by that name. Specifically, appellate defense counsel argue that CPT AS did not properly "fact check or investigate the contents of the statement that he presented to the panel." However, we conclude that CPT AS conducted a reasonable investigation. First, CPT AS specifically discussed with appellant the propriety of including information about Ms. VM in the unsworn statement. Next, CPT AS confirmed the existence of Ms. VM and her illness by interviewing a close friend of appellant's, Ms DC. In the days before trial, the subpoena process initiated by federal marshals established the existence and condition of Ms. VM. Finally, CPT AS interviewed appellant's father, SFC DM, and asked him about Ms. VM. From this investigation, CPT AS was in a position to make an informed, tactical decision about the contents of the unsworn statement.

In this case, we conclude that CPT AS's decision to include information about Ms. VM in the unsworn statement does not fall outside the range of reasonable professional assistance. Although SFC DM did not know Ms. VM, and could therefore potentially give unfavorable testimony, CPT AS made the tactical decision to present the mitigation evidence about Ms. VM after a thorough investigation. Moreover, CPT AS cross-examined SFC DM about the extent of his knowledge, so as to improve the quality of the mitigation evidence. For example, although not fully developed on the record, SFC DM testified that appellant had some problems with her mother and lived outside the home at a young age. He also admitted that he lost touch with appellant for several years. Finally, SFC DM testified that he was familiar with the practice of referring to a friend of the family as an "aunt."

In retrospect, some may argue that if the trial defense counsel intended to rely so heavily on appellant's relationship with and care for Ms. VM in extenuation, he should have elicited more evidence from appellant's father and others that would have provided more support for that theory. However, by all accounts, the defense

counsel was in a challenging position. Ms. DC, who could verify the existence of Ms. VM, had proven to be a difficult witness, indicating an unwillingness to testify in appellant's case notwithstanding having been subpoenaed.[2] Sergeant First Class DM was one of the few defense witnesses, and while CPT AS challenged him on his understanding of appellant's living situation during cross-examination, he could not completely undermine his own witness's credibility without weakening the defense case. In his post-trial affidavit, defense counsel explained his trial strategy as one where he sought to provide as much favorable information as possible to help explain his client's absence, while limiting exposure to the more damaging facts surrounding appellant's behavior.[3] Captain AS accomplished this strategy by offering an unsworn statement and by controlling the extent of the testimony he elicited from appellant's father. As the Supreme Court noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Ultimately, we conclude that CPT AS's strategy "was tactically sound and not unreasonable." *Stephenson*, 33 M.J. at 82. Accordingly, defense appellate counsels' claim that the trial defense counsel acted unreasonably by continuing to rely on the theory that extenuating facts surrounded appellant's absence, despite rebuttal testimony to the contrary, does not reach the level of seriously deficient performance contemplated by *Strickland*.

---

[2] While Ms DC confirmed the existence and medical condition of Ms. VM as well as appellant's care for Ms. VM, Ms. DC was a challenging witness. CPT AS struggled to keep in regular contact with Ms. DC and when the federal marshals served the subpoena for the court-martial, she became very agitated with CPT AS and refused to appear for trial. CPT AS made the tactical decision to not force her to appear, anticipating that she would be an adverse witness.

[3] The affidavit and accompanying notes of CPT AS show that he attempted to carefully navigate the potential minefield of appellant's complicated home and personal life. For example, he tried to highlight appellant's rehabilitative potential through testimony by her father, further bolstered by the fact that he was an active duty SFC. At the same time, CPT AS sought to limit testimony by SFC DM that would reveal some additional difficult circumstances during her childhood that might reflect poorly on his client. Additionally, CPT AS successfully limited the disclosure of some of the more damaging information surrounding appellant's arrest that terminated her absence. Specifically, that she had been arrested for simple battery and family violence for physically assaulting Ms. DC, the same Ms. DC that was an important witness in this case. She pleaded *nolo contendere* and served twenty days in county jail for these offenses.

*Decision to Use Mitigating Facts in Post-Trial Submission*

Finally, we review defense counsel's decision to continue to rely on the same facts in appellant's post-trial submission despite the government's clear challenge to the veracity of that information. Generally, "[w]e will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A. 1977). Here, defense counsel clearly articulated a reasonable basis for his decision to maintain his adherence to the extenuating matters surrounding appellant's prolonged absence. Captain AS continued to try to contact appellant during this period but was unsuccessful. He also demonstrated due diligence in pursuing letters of support from appellant's father and several soldiers from her unit. Ultimately, everyone he contacted declined to provide further assistance, so he was left with limited options. Captain AS chose to continue with the same explanation for appellant's absence, anticipating that the theory might garner clemency for his client from the convening authority. Although unsuccessful, this tactic was sensible given the limiting circumstances of the case.

*Conclusion*

The record reflects that the trial defense counsel was very diligent in every phase of this case—from pretrial investigation, to the pre-trial motions, to his advocacy throughout the court-martial, to his post-trial efforts on behalf of his client. Although some may question his tactical decisions, there is clear evidence here that CPT AS made those choices after thorough investigation and preparation, and his actions were reasonable in light of the situation in which he found himself. We therefore find that under the unique circumstances of this case, defense counsel's performance was not deficient.

Assuming *arguendo* that CPT AS's performance was deficient and he made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment, we do not find that his errors were so serious as to deprive appellant of a fair trial. Appellant was found guilty of desertion terminated by apprehension. She was gone for almost three years, and during her absence, she missed her unit's deployment. This court regularly reviews sentences related to this type of offense, and we find that the adjudged sentence was very consistent with similarly situated cases. Appellant has not shown that if deficient, that defense counsel's performance prejudiced the defense.

**DECISION**

Upon review of the entire record, to include defense counsel's affidavit and supporting documents, we do not find the performance of appellant's defense counsel to be deficient. As such, we need not address appellant's remaining

assignments of error. We hold appellant received effective assistance of counsel, and the findings of guilt and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge KERN and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court