*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Keshawn M. BOCAGE**
Aviation Electrician's Mate Airman Recruit (E-1), U.S. Navy
*Appellant*

**No. 202000206**

_____

Decided: 25 May 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Stephen C. Reyes (trial)
Benjamin C. Robertson (Entry of Judgment)

Sentence adjudged 18 June 2020 by a general court-martial convened at Fleet Activities Yokosuka, Japan, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 24 months[1] and a bad-conduct discharge.

For Appellant:
*Captain Thomas P. Belsky, JAGC, USN*

---

[1] The convening authority suspended confinement in excess of 12 months pursuant to a pretrial agreement.

For Appellee:
*Lieutenant Megan E. Martino, JAGC, USN*
*Major Kerry E. Friedewald, USMC*
*Lieutenant Gregory A. Rustico, JAGC, USN*

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of wrongfully possessing, using, distributing, and conspiring to distribute methylenedioxyamphetamine, a Schedule I controlled substance, in violation of Articles 81 and 112a, Uniform Code of Military Justice [UCMJ].[2]

He asserts two assignments of error: (1) that his punitive discharge was inappropriately severe, particularly when none of the other servicemembers investigated for illegal drug activity at Naval Air Station [NAS] Atsugi during the same timeframe received a punitive discharge despite engaging in similar or more egregious misconduct; and (2) that his trial defense counsel was ineffective by failing to pursue a "substantial assistance" recommendation from the trial counsel pursuant to Rule for Courts-Martial [R.C.M.] 1107(d)(1)(C)(i) (2016), given Appellant's cooperation with the government in the investigation and prosecution of other servicemembers and his known objective to avoid a punitive discharge. We find Appellant's plea improvident to Specification 4 of Charge II, wrongful possession of a controlled substance with intent to distribute, set aside the finding of guilty for that offense, and affirm its lesser-included offense of wrongful possession. Finding no other prejudicial error, we affirm the remaining findings and, upon reassessment, affirm the sentence.

## I. BACKGROUND

Between June 2017 and January 2019, Appellant possessed, used, and distributed the hallucinogenic street drug, "ecstasy," while stationed at NAS Atsugi, Japan, where he worked in the field of aircraft maintenance. During

---

[2] 10 U.S.C. §§ 881, 912a.

this 20-month period, in conspiracy with other Sailors, Appellant traveled to Tokyo over 10 times to buy the illegal drug from a civilian supplier and sold it for between $20 and $50 per tablet to at least 13 other Sailors, from whom he received a total of over $6,000.

In May 2020, Appellant entered into a pretrial agreement [PTA], in which he agreed to plead guilty to the offenses at general court-martial and provide truthful information and testimony regarding his knowledge of the illegal possession, use, and distribution of controlled substances by other individuals. In exchange, the convening authority agreed to suspend confinement in excess of 12 months and commute any adjudged dishonorable discharge to a bad-conduct discharge [BCD].[3]

On 1 June 2020, Appellant's trial defense counsel [TDC] spoke to the trial counsel about Appellant's participation in proffer interviews with government investigators, as required under the PTA. During the conversation, TDC specifically asked if the trial counsel would consider writing a substantial assistance letter for Appellant.[4] The trial counsel declined to write such a letter, believing Appellant would not be particularly helpful to the government. On 5 June and 10 July 2020, accompanied by TDC, Appellant was interviewed by law enforcement. The trial counsel, who was not present at the interviews, subsequently found the information Appellant provided was helpful; however, he did not tell that to TDC or convey that his mind had changed about providing a substantial assistance letter. Neither he nor TDC broached the subject again after their conversation on 1 June.

On 18 June 2020, Appellant pleaded guilty to the offenses at general court-martial and was sentenced to confinement for 24 months and a dishonorable discharge. On 9 July 2020, the convening authority complied with the PTA in taking action on the case, suspending confinement in excess of 12 months and approving only a BCD in lieu of the adjudged dishonorable discharge.

---

[3] Due to Appellant's leading role in the drug ring, the trial counsel was unwilling to endorse other PTA terms proposed by the Defense that would have protected against a BCD and required the trial counsel to provide a substantial assistance letter in the event Appellant testified for the government in another case.

[4] After granting Appellant's motion to attach a declaration from the trial counsel contesting TDC's affidavit in this regard, we ordered a fact-finding hearing pursuant to R.C.M. 810(f) to address the issue. The military judge presiding over that hearing made factual findings supporting TDC's account that this conversation did take place, which we find supported by the record and not clearly erroneous. *See United States v. Wean*, 45 M.J. 461, 462–63 (C.A.A.F. 1997).

## II. DISCUSSION

### A. Sentence Appropriateness

We review sentence appropriateness de novo.[5] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[6] In exercising this function, we seek to assure that "justice is done and that the accused gets the punishment he deserves."[7] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[8] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[9]

We may consider other court-martial sentences when determining sentence appropriateness; however, we are only required "to engage in sentence comparison with *specific cases* . . . in those rare instances in which sentence appropriateness can be fairly determined *only* by reference to disparate sentences adjudged in closely related cases."[10] An appellant bears the burden of demonstrating that another case is "closely related" to his case and that the sentences are "highly disparate."[11] If the appellant meets that burden, then the government must show that there is a rational basis for the disparity.[12]

Appellant argues his sentence is inappropriately severe because, of all the Sailors investigated for buying, selling, or using illegal drugs in and around NAS Atsugi at the time, he is the only one who received a punitive discharge. We disagree with this argument for several reasons.

First, most of the cases Appellant cites are not closely related to his particular case. Factors that make cases "closely related" include "coactors involved

---

[5] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[6] Article 66(d)(1), UCMJ.

[7] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[8] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[9] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[10] *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999)).

[11] *Lacy*, 50 M.J. at 288.

[12] *Id.*

in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared."[13] The majority of the cases cited by Appellant involve different Sailors, distributing different controlled substances, with no connection to Appellant's illegal drug operations. The mere fact that other Sailors were illegally distributing controlled substances in the vicinity of NAS Atsugi around the same time Appellant was distributing ecstasy there is insufficient to make their cases closely related to Appellant's.[14]

Second, to the extent that any of the cases Appellant cites is even arguably closely related because it intersects with some of his own misconduct, there is a rational basis for the disparity in Appellant's higher court-martial sentence. The record supports, for example, that Seaman Bravo[15] asked Appellant to buy ecstasy and that Seaman Victor gave Appellant money to do so and accompanied him on some of his trips to Tokyo to purchase the drug. However, the record also indicates that these Sailors' involvement comprised only a small fraction of the purchase, use, and distribution of ecstasy that Appellant engaged in with numerous other Sailors for over a year and a half. We find it eminently reasonable that the ringleader responsible for buying and distributing over a hundred doses of an illegal hallucinogenic to over a dozen Sailors received a punitive discharge and substantial confinement at a general court-martial, whereas less culpable actors received either lesser sentences at lower forums or adverse administrative action.[16]

---

[13] *Lacy*, 50 M.J. at 288. *See also United States v. Kelly*, 40 M.J. 558, 570 (N-M. Ct. Mil. Rev. 1994) ("[A]s a threshold requirement for the review of forum selection or sentence comparison, the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design").

[14] As Appellant concedes, "the Court typically should not compare sentences based on the nature of the charges alone." Appellant's Reply Br. at 3 (citing *United States v. Ballard*, 20 M.J. 282, 285 (C.M.A. 1985) (rejecting the view that courts must "inquire . . . whether [a] penalty is . . . unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime")).

[15] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[16] Seaman Bravo pleaded guilty at a special court-martial to wrongfully using, distributing, and conspiring to distribute controlled substances, and received 90 days' confinement and reduction to E-1. Seaman Victor was administratively discharged under other than honorable conditions in lieu of trial by court-martial.

Third, Appellant's punishment was the predictable result of a PTA that he negotiated and voluntarily entered into with the convening authority. Pursuant to the agreement, any adjudged confinement in excess of 12 months would be suspended, and any adjudged dishonorable discharge would be commuted to a BCD. These terms are the reason half of the adjudged 24 months' confinement was suspended and Appellant received only a BCD, as opposed to the dishonorable discharge that was adjudged. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement . . . ."[17]

Finally, irrespective of the PTA, in light of the nature and duration of Appellant's overseas misconduct, which impacted the service of over a dozen other Sailors, we find that the approved sentence of 24 months' confinement (12 of which were suspended) and a BCD is just, and that Appellant received the punishment he deserves. After reviewing the record as a whole, we find that the sentence is correct in law, appropriately reflects the matters in aggravation, extenuation, and mitigation presented, and should be approved.

## B. Ineffective Assistance of Counsel

Appellant asserts his TDC was ineffective in not requesting a substantial assistance letter from the trial counsel. We review claims of ineffective assistance of counsel de novo.[18]

In the military, the Sixth Amendment right to effective assistance of counsel "extends to assistance in the preparation and submission of post-trial matters," since "[o]ne of the last best chances an appellant has is to argue for clemency by the convening authority."[19] However, "[j]udicial scrutiny of counsel's performance must be highly deferential," and we "must indulge a strong pre-

---

[17] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished); *see also United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328, *8 (N-M. Ct. Crim. App. June 30, 2021) (unpublished) (questioning an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty").

[18] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

[19] *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001) (internal quotation marks and citations omitted).

sumption that counsel's conduct falls within the wide range of reasonable professional assistance."[20] To determine if the presumption of competence has been overcome, we use the following three-pronged test:

> (1) Are [the] appellant's allegations true; if so, is there a reasonable explanation for counsel's actions?

> (2) If the allegations are true, did defense counsel's level of advocacy fall measurably below the performance . . . [ordinarily expected] of fallible lawyers?

> (3) If a defense counsel was ineffective, is there a reasonable probability that, absent the errors, there would have been a different result?[21]

Here, Appellant's allegation that TDC never asked for a substantial assistance letter is not true. TDC specifically asked the trial counsel if he would be willing to consider writing a substantial assistance letter for Appellant, and the trial counsel declined. Appellant nevertheless participated in proffer sessions with law enforcement, as required under the PTA, in order to receive its principal benefits: suspension of half of the adjudged 24 months' confinement and disapproval of the adjudged dishonorable discharge. While the trial counsel ultimately found Appellant more helpful during these sessions than he had expected, he never disclosed that to TDC, nor gave TDC any indication that he had reconsidered his decision not to provide a substantial assistance letter.

In light of the nature and duration of Appellant's misconduct, the trial counsel's refusal to endorse an earlier proposed PTA term requiring a substantial assistance letter if Appellant testified for the government, and the trial counsel's stated unwillingness to consider providing such a letter when asked, we find TDC's decision not to pursue the matter further after 1 June 2020 was not unreasonable. In this context, while "another attorney might have litigated this issue differently, we cannot say that [TDC's] conduct falls measurably below the performance expected of ordinary fallible lawyers."[22] Accordingly, we find Appellant has not overcome the strong presumption that TDC's advocacy fell within the wide range of reasonable professional assistance.

---

[20] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[21] *Gilley*, 56 M.J. at 124 (internal quotation marks and citation omitted).

[22] *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011).

## C. Providence Inquiry for Possession with Intent to Distribute

A military judge may not accept a guilty plea unless he determines there is a sufficient factual basis for every element of the offenses to which the accused has pleaded guilty.[23] In Specification 4 of Charge II, Appellant was charged with and pleaded guilty to wrongful possession of methylenedioxyamphetamine with the intent to distribute it. However, as the Government concedes, the providence inquiry did not address the element of intent to distribute. We therefore find Appellant's plea provident only to the lesser-included offense of wrongful possession, and we except and dismiss with prejudice the language, "with the intent to distribute the said controlled substance," as reflected in our decretal paragraph below.

## D. Sentence Reassessment

Having dismissed Appellant's conviction for the greater offense charged in Specification 4 of Charge II and affirmed only its lesser-included offense, we must determine whether we can reassess the sentence or must remand for the trial court to do so. We do so by analyzing (1) whether there have been dramatic changes in the penalty landscape or exposure; (2) whether sentencing was by members or a military judge alone; (3) whether the nature of the remaining offenses captures the gravamen of the criminal conduct included within the original offenses and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (4) whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.[24]

Here, Appellant remains convicted of possessing, using, distributing, and conspiring to distribute a Schedule I controlled substance. While his overall exposure to confinement has been reduced from 50 years to 40 years, the record reflects that both the parties and the military judge essentially ignored the element of intent to distribute throughout the proceedings—e.g., the maximum punishment was apparently calculated based on the offense of only wrongful possession. The sentencing was conducted by a military judge, and the remaining offenses capture the gravamen of Appellant's illegal-drug-related misconduct. The offenses that remain are offenses that we have sufficient experience and familiarity with to reliably determine what sentence would have been imposed at trial. Accordingly, we conclude we are able to reassess the sentence

---

[23] *See United States v. Simmons*, 63 M.J. 89, 92 (C.A.A.F. 2006); R.C.M. 910(e), Discussion.

[24] *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013).

and find that the sentence the military judge would have imposed for the remaining offenses is the same as the one he originally adjudged.

## III. CONCLUSION

The language, "with the intent to distribute the said controlled substance," of Specification 4 of Charge II is **SET ASIDE AND DISMISSED WITH PREJUDICE.** We affirm Appellant's conviction of the specification's remaining language, comprising the lesser-included offense of wrongful possession of methylenedioxyamphetamine. As the Entry of Judgment does not accurately reflect the disposition of the charges, in accordance with Rule for Courts-Martial 1111(c)(2), we modify the Entry of Judgment and direct that it be included in the record.

The remaining findings and the sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

# United States Navy–Marine Corps
# Court of Criminal Appeals

| UNITED STATES | NMCCA NO. 202000206 |
|---|---|
| **v.** | **ENTRY OF JUDGMENT** |
| **Keshawn M. BOCAGE** Aviation Electrician's Mate Airman Recruit (E-1) U.S. Navy *Accused* | *As Modified on Appeal* **25 May 2022** |

On 18 June 2020, the Accused was tried at Fleet Activities Yokosuka, Japan, by a general court-martial, consisting of a military judge sitting alone. Military Judge Stephen C. Reyes presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification:** **Conspiracy to Distribute Methylenedioxyamphetamine, a Schedule I controlled substance, on divers occasions between about June 2017 and about January 2019.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Charge II:** **Violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a.**

> *Plea:* Guilty.
> *Finding*: Guilty.

10

**Specification 1:** **Wrongful Use of Methylenedioxyamphetamine, a Schedule I controlled substance, on or about 8 July 2019.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 2:** **Wrongful Use of Lysergic Acid Diethylamide on or about 15 July 2019.**

*Plea:* Not Guilty.

*Finding:* Dismissed.

**Specification 3:** **Wrongful Introduction of Methylenedioxyamphetamine, a Schedule I controlled substance, between about March 2019 and about April 2019.**

*Plea:* Not Guilty.

*Finding:* Dismissed.

**Specification 4:** **Wrongful Possession of Methylenedioxyamphetamine, a Schedule I controlled substance, with Intent to Distribute on or about 1 December 2017.**

*Plea:* Guilty.

*Finding:* Guilty of the Lesser-Included Offense of Wrongful Possession; the language, "with the intent to distribute the said controlled substance," was Dismissed.

**Specification 5:** **Wrongful Distribution of Methylenedioxyamphetamine, a Schedule I controlled substance, on divers occasions between about June 2017 and about January 2019.**

*Plea:* Guilty.

*Finding:* Guilty.

## SENTENCE

On 18 June 2020, the military judge sentenced the Accused to the following (as modified during post-trial action by the convening authority):

**Confinement for 24 months.**

**A bad-conduct discharge.**

The Accused shall be credited with 96 days of confinement already served, to be deducted from the adjudged sentence to confinement.

The convening authority suspended confinement in excess of 12 months for a period of 12 months.

11



FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court