*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, STEPHENS, and DEERWESTER
Appellate Military Judges

————————————

**UNITED STATES**
Appellee

**v.**

**Paul E. COOPER**
Yeoman Second Class (E-5), U.S. Navy
Appellant

**No. 201500039**

Decided: 10 December 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Robert B. Blazewick (Trial)
Marcus N. Fulton (*DuBay* Hearing)

Sentence adjudged 19 September 2014 by a general court-martial convened at Naval Station Mayport, Florida, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for five years, and a dishonorable discharge.

For Appellant:
*Lieutenant Michael W. Wester, JAGC, USN*
*Lieutenant Ryan W. Aikin, JAGC, USN*

For Appellee:
*Major Kerry E. Friedewald, USMC*
*Lieutenant Joshua C. Fiveson, JAGC, USN*
*Lieutenant Commander Justin C. Henderson, JAGC, USN*

Senior Judge STEPHENS delivered the opinion of the Court, in which Judge DEERWESTER joined. Chief Judge Emeritus CRISFIELD filed a separate dissenting opinion.

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

STEPHENS, Senior Judge:

In 2014, Appellant was convicted, contrary to his pleas, of three specifications of sexual assault and one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice [UCMJ].[1] In 2015, this Court ordered a *DuBay*[2] hearing to ascertain whether Appellant's trial defense counsel [TDC] was ineffective in failing to submit Appellant's request for a certain Individual Military Counsel [IMC]. The *DuBay* military judge found that Appellant did make an IMC request to his TDC, who did not properly forward it for action by the appropriate approval authority, and that the IMC would have been reasonably available for his trial. Based on that, in 2018 we set aside the findings and sentence and remanded the case for a new trial. But the Judge Advocate General of the Navy certified the case to the Court of Appeals for the Armed Forces [CAAF], asserting, among other things, that during the trial, Appellant waived his right to an IMC during a colloquy with the military judge. CAAF agreed that Appellant waived his right to an IMC, declined to reach the remaining certified issues, and remanded to this Court to resolve the remaining assertions of error, which include whether Appellant's TDC was ineffective for failing to submit his IMC request.

Now that this case is before us for a second time, we use our authority under Article 66, UCMJ, as expressed by CAAF in *United States v. Chin*,[3] to disregard Appellant's waiver and find ineffective assistance of counsel by the TDC, find material prejudice to Appellant's substantial statutory right to IMC, set aside the findings and sentence, and remand for a new trial.

---

[1] 10 U.S.C. § 920.

[2] 37 C.M.R. 411 (C.M.A. 1967).

[3] 75 M.J. 220 (C.A.A.F. 2016).

## I. BACKGROUND

Appellant, a Navy Reservist, was assigned to support Joint Task Force-Guantanamo Bay, Cuba [JTF-GTMO]. While in Cuba, he met Petty Officer Second Class [PO2] Papa[4] and they returned to his billeting trailer. The next day, PO2 Papa reported a sexual assault. Appellant claimed the sexual contact was consensual. No alcohol was involved and there were no physical injuries to PO2 Papa.

As Appellant was assigned duties in the JTF-GTMO staff judge advocate's office, he knew several judge advocates. One of them, TN, was an Army National Guard Captain [CPT] who arrived at the time Appellant learned he was under investigation for a sexual assault. Captain TN formed an attorney-client relationship with Appellant concerning some un-related legal assistance matters and later became Appellant's supervisor. Appellant was unable to get any local military defense counsel in Cuba and decided to speak with CPT TN about his case. According to CPT TN, Appellant had "no one else to talk to, no one to give him any guidance at all,"[5] and formed an attorney-client relationship with Appellant concerning the sexual assault investigation.

After charges were preferred, an active duty Navy Lieutenant [LT], LT JB, was detailed as Appellant's TDC. She was stationed in Mayport, Florida, and represented Appellant at the Article 32, UCMJ, hearing. Appellant believed the hearing had gone poorly and he wanted to request an IMC. He initially requested a Commander in the Navy Reserve who was in Cuba. But after TDC conducted some research, she told Appellant the Commander would not be available because he was transitioning from active duty. So, Appellant agreed not to pursue the Commander.

After the hearing, Appellant ran into CPT TN at a base facility in Cuba. After telling him how the hearing went, CPT TN told Appellant he was available and willing to be his IMC. Captain TN also told Appellant he would need to request him as an IMC.

What happened next was only determined at the post-trial *DuBay* hearing. When the *DuBay* military judge took LT JB's testimony, she testified

---

[4] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[5] *DuBay* Military Judge Findings of Fact and Conclusions of Law at 2 (quoting *DuBay* Hearing R. at 237).

that Appellant never requested CPT TN as an IMC, though she did admit to speaking with him when she contacted him as a character witness. But CPT TN testified that in his conversation with LT JB, he told her he had an attorney-client relationship with Appellant and wanted to represent him at the court-martial as his IMC. Lieutenant JB testified that CPT TN never told her these things. Even though the *DuBay* military judge found both witnesses credible, he found Appellant had carried his burden to show he had told his TDC that he wanted CPT TN for his IMC. The military judge also found CPT TN was reasonably available at the time to serve as Appellant's IMC.

Appellant, believing he could not have CPT TN as his IMC, asked his TDC about a Marine Captain, but his TDC told him the Captain had left Guantanamo Bay to be a trial counsel and, because he was now a prosecutor, would not be available. Appellant agreed to not pursue him, either.

At his arraignment, Appellant and his counsel engaged in a brief colloquy with the military judge. Following the script from the Navy-Marine Corps trial guide, the military judge asked TDC if any other counsel had been detailed to the case or if any IMC had been requested. Lieutenant JB answered, "No, sir." Continuing with the script, the military judge informed Appellant of his rights to counsel and his right to IMC. Appellant responded that he understood his rights, that he wanted to be represented by LT JB, and that he did not wish to be represented by any other counsel. About a month later, Lieutenant Commander [LCDR] NG was also detailed to Appellant's case. When LCDR NG made his first appearance on the record, he answered in the negative when the military judge asked if any other counsel had been detailed. Appellant did not contradict his TDC or speak up about his IMC requests.

In 2018, this Court heard Appellant's appeal and decided in his favor on the IMC issue, set aside the findings and sentence, and remanded his case for a new trial. We did so because Appellant's TDC deprived him of his statutory right to an IMC when she failed to forward his IMC request for CPT TN. In that opinion, we also took the unusual step of issuing a written factual sufficiency analysis [upon finding the convictions factually sufficient] in a case where we were remanding for a new trial. We also considered the other assignments of error mooted by the remand. This included whether TDC was ineffective for failing to forward the three separate IMC requests.

The Judge Advocate General of the Navy certified four issues to CAAF: (1) did Appellant waive his right to IMC; (2) should TDC's failure to submit

the IMC request be reviewed for ineffective assistance of counsel [IAC] under *Strickland v. Washington*,[6] (3) if *Strickland* did not apply, whether Appellant was deprived of his statutory right to an IMC, and (4) whether Appellant was prejudiced.

A divided CAAF held that the above-described colloquies demonstrated a "knowing and intelligent waiver"[7] of his right to IMC. This rendered the other certified issues moot and the case was remanded to this Court to resolve the remaining AOEs.[8] On remand, we granted Appellant's motion to augment his initial AOEs with additional ones.[9] We only discuss the AOEs necessary for resolution of this case.

---

[6] 466 U.S. 668 (1984).

[7] *United States v. Cooper*, 78 M.J. 283, 287 (2019).

[8] The remaining issues were: (1) whether the TDC was ineffective concerning IMC [though that issue was held to be waived by Appellant], was ineffective in failing to challenge Government expert testimony or to rebut it with Defense expert testimony; (2) whether the evidence was legally and factually sufficient; (3) whether the military judge erred in excluding hearsay evidence; (4) Appellant was denied his Sixth Amendment right to choice of counsel and his statutory right to IMC; (5) the military judge erred in admitting testimony in violation of the Confrontation Clause; (6) unlawful command influence by the convening authority; (7) deficient Article 32, UCMJ, investigation; (8) IAC due to the TDC's failure to move to suppress a written statement; (9) IAC due to TDC;s failure to question complaining witness about inaccuracies in her testimony; and (10) IAC due to cumulative error. AOEs (6) through (10) were all raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[9] The supplemental AOEs were: (11) This Court erred in its initial Article 66(c) review by placing the burden on Appellant to prove the victim's motive to fabricate and therefore a new de novo factual sufficiency review is required; (12) This Court should conduct a new factual sufficiency review and find that Appellant's convictions are not factually sufficient; (13) Appellant did not receive effective assistance of counsel when his TDC incorrectly told the military judge that Appellant did not request IMC; and (14) Appellant has been denied his right to a timely review of his convictions. AOEs (13) and (14) were also raised pursuant to *Grostefon*, 12 M.J. 431.

## II. DISCUSSION

### A. This Court May Disregard Waiver under Article 66

*1. Article 66 grants service courts of criminal appeals broad and unique powers*

Military appellate courts owe their existence to the controversy over how courts-martial were conducted after a World War I-era riot in Houston, Texas.[10] The courts-martial had significant legal problems and were infused with racial bias. Thirteen of the accused were executed just two days after their sentence was announced. No entity outside the local command reviewed the findings or sentence of any case. The Boards of Review were created in the aftermath of these cases specifically to provide review and protect the rights of the accused.

After World War II, Congress created the UCMJ owing to widespread displeasure over court-martial abuses during the war.[11] One Board of Review, after World War II, "set aside or reduced about 85 percent of the 27,500 general court-martial convictions it reviewed."[12] From their inception and in their re-creation, military appellate courts have been tasked with safeguarding the rights of servicemembers who are subject to military discipline.

Article 66 states that service criminal courts of appeal [CCA] "may affirm only such findings of guilty, and the sentence or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[13] This "factual sufficiency" power has

---

[10] *See* Lisa M. Schenck, *Symposium: "Just the Facts, Ma'am": How Military Appellate Courts Rely on Factual Sufficiency Review to overturn Sexual Assault Cases When Victims Are "Incapacitated,"* 45 Sw L. Rev. 523 at 527 (2016) (citing Fred L. Borch III, *The Largest Murder Trial in the History of the United States: The Houston Riots Courts-Martial of 1917*, Army Law. 1-3 (2011)).

[11] *See*, *e.g.*, Felix E. Larkin, *Professor Edmund M. Morgan and the Drafting of the Uniform Code*, 28 Mil. L. Rev. 7 (Apr. 1965); Arthur John Keefe & Morton Moskin, Codified Military Injustice, 35 Cornell L.Q. 151, 160 (1950).

[12] *See* Schenck, 45 Sw. L. Rev. at 529 (citing *Calley v. Callaway*, 519 F.2d 184, 196 n.15 (5th Cir. 1975) (citing William T. Generous, *Swords and Scales: The Development of the Uniform Code of Military Justice* 14-15, 17 (1973); *Note: Collateral Attack on Courts-Martial in the Federal Courts*, 57 Yale L.J. 483, 488 (1948)).

[13] UCMJ art. 66(d).

been the subject of much discussion and is nearly unique[14] to the military justice system. The CCAs have been called "something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused."[15] The Court of Appeals for the Armed Forces has acknowledged the "awesome, plenary de novo power of review under Article 66"[16] and has commented that a "clearer *carte blanche* to do justice would be difficult to express."[17]

*2.* United States v. Chin *and its use by service courts of criminal appeals*

In 2016, a divided CAAF issued its opinion in *United States v. Chin.*[18] In *Chin*, the appellant pleaded guilty at a general court-martial consisting of a military judge alone to six specifications of orders violations, seven specifications of dereliction of duty concerning handling of classified materials, five specifications concerning unauthorized retention of classified materials, and one specification of larceny of military property. The military judge accepted the appellant's pleas, found him guilty, and sentenced him to twelve months of confinement, reduction to pay-grade E-2, and a bad-conduct discharge. The convening authority [CA] approved just ten months of confinement, but otherwise approved the adjudged sentence.

Under Article 66, Chin was statutorily entitled to an appeal to the Air Force Court of Criminal Appeals [AFCCA]. His pretrial agreement [PTA] "waived all waivable motions."[19] At trial, the military judge determined that "multiplicity motions" were part of that clause in the PTA and that Chin "would have raised a multiplicity motion"[20] but for that clause.

The Air Force Court of Criminal Appeals, drawing on various CAAF precedent[21] and a persuasive opinion from the Army Court of Criminal Appeals

---

[14] The Appellate Division of the Supreme Court of New York, an intermediate appellate court, also possesses factual sufficiency review.

[15] *United States v. Parker*, 36 M.J. 269, 271 (C.A.A.F. 1993).

[16] *Id.* (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990)).

[17] *Id.* (quoting *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991)).

[18] 75 M.J. 220.

[19] *Id.* at 221.

[20] *Id.*

[21] *United States v. Chin*, No. ACM 38452, 2015 CCA LEXIS 241 at *11-12 (A.F. Ct. Crim. Ap. 12 Jun 2015) (unpublished). AFCCA cited to *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991) (holding that a CCA need not apply waiver or plain

[ACCA],[22] ignored Chin's waiver and set aside three of the specifications as unreasonably multiplied because his criminality was grossly exaggerated. The Air Force Court of Criminal Appeals reassessed and affirmed the sentence. It did so based on its reading of Article 66's grant of a "plenary, de novo power of review."[23]

The Court of Appeals for the Armed Forces affirmed. Judge Ryan, writing for the majority, held that Article 66's statutory command to the service criminal courts of appeals [CCAs] was to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error."[24] While an accused could agree to "waive all waivable motions" and bind himself to not raise such a waived issue on appeal, this agreement could not work an estoppel on the CCA's statutory mandate to review the case and approve only the findings and sentence that "should be approved," unless an accused also waived appellate review altogether. Then-Judge Stucky dissented, arguing that this was "no standard at all" and amounted to "no more than the uncertain measure of the conscience of the particular judges presiding over the case—in other words, pure equity."[25]

Since *Chin*, CCAs have invoked it many dozens of times,[26] though by no means in a manner that overwhelmingly benefitted appellants. Oftentimes, CCAs have invoked *Chin* to disregard a waiver, discuss a legal issue that it deemed important to the case, and find no error, or find an error but no prejudice. This would seem to be in accord with the paternalistic nature of the CCAs and their secondary duty of providing decision-based guidance to military judges, trial counsel, trial defense counsel, staff judge advocates, convening authorities, and others working in the field of military justice.

---

error review in interest of justice); *Cole*, 31 M.J. at 272 (recognizing CCAs' "awesome, plenary, de novo power of review").

[22] *Id.* at \*10-11. The Air Force Court of Criminal Appeals cited *United States v. Rivera*, No. 20130397, 2014 CCA LEXIS 893 at \*4 (A. Ct. Crim. App. Dec. 15, 2014) (unpublished).

[23] *Id.* at \*11.

[24] *Chin*, 75 M.J. at 223. *Cf. United States v. Tardiff*, 57 M.J. 219, 223 (C.A.A.F. 2002) (finding Article 59(a) intended by Congress to prevent CCAs from reversals for minor technical errors).

[25] *Id.* at 226 (Stucky, J., dissenting).

[26] Including this opinion, *Chin* has been cited by CCAs eighty-one times, nine of which in published opinions.

Recently in *United States v. Tyndall*,[27] this Court invoked *Chin* to correct what we considered to be an obvious, albeit relatively minor, error. The appellant was entitled to an additional three days of pretrial confinement credit. He had been confined by civilian authorities for three days for the same offense of which he was convicted at court-martial (and also later placed in military pretrial confinement for that offense). The trial counsel missed it. The military judge missed it. And so did the TDC. When the TDC agreed with the trial counsel's incorrect calculation of pretrial confinement credit, the appellant stayed silent and did not contradict him. Owing to the "clear and ample evidence that [the appellant] was entitled to three days of pretrial confinement credit," we declined to allow an "oversight or misapplication of the law" to override the appellant's waiver or undermine our "unique mandate under Article 66."[28]

There has been little structure or consistency among CCA decisions on how to wield *Chin* or what limitations it might contain. In *United States v. Conley*,[29] ACCA admitted that it read *Chin* narrowly and focused on how an appellant who had specifically waived an issue might later ask a CCA for review and how a CCA should proceed. But ACCA also compellingly discussed its "framework for how [it] approach[es] and analyze[s] whether to exercise [its] broad authority under Article 66."[30] The Army court described Article 66 as a "safety valve of last resort."[31] The court's language is worth quoting in full:

> So while our authority under Article 66 is in *no way* limited to certain issues, on a practical level the exercise of this unique power is more likely to be found in certain military circumstances which—while not technically amounting to legal error—have disadvantaged the accused in a manner that the CCA determines needs correction or has resulted in a court-martial where the perception of unfairness in the trial may have the actual effect of *undermining* good order and discipline. If on a practical level we are more likely to exercise our

---

[27] No. 201900096, 2019 CCA LEXIS 476 (N-M. Ct. Crim. App. Nov. 27, 2019) (unpublished).

[28] *Id.* at *10.

[29] 78 M.J. 747 (A. Ct. Crim. App. 2019).

[30] *Id.* at 751.

[31] *Id.* at 752.

"should be approved" power in circumstances that are, at the
source, born from uniquely military origins, we would benefit
from the parties briefing the issue with this in mind.[32]

We agree that, to the extent that *Chin* does have any limitations, CCAs
would appear to be on the most solid ground when overlooking waiver to
address issues needing correction that originate from something uniquely
military in nature and that, left uncorrected, may undermine good order and
discipline or the perceived fairness of a court-martial.

The statutory right to IMC is uniquely military in origin. We recognize
the very real limitation a military accused has in understanding the IMC
process, aided only by his TDC. We also recognize the trepidation an accused
may have in disagreeing with his TDC—who is charged with defending him—
in open court in front of a military judge who will preside over his court-
martial and may even be the factfinder and sentencing authority.

In short, *Chin* and Article 66 allow a CCA to disregard a waiver in order
to rectify a few specifications for unreasonable multiplication of charges or to
correct an error regarding 72 hours of unlawful pretrial confinement. We
believe its authority must also necessarily extend to determining whether an
appellant's TDC was ineffective and caused a deprivation of his statutory
right to IMC.

We also acknowledge the possibility for post-trial gamesmanship where
an appellant, now convicted, submits a sworn declaration that—perhaps not
entirely accurately—alleges his TDC failed to forward IMC requests in just
the same manner as in this case, in the hopes that he will receive a windfall
of a second bite at the apple. The sky will not fall. There are competing
declarations from the TDC, TDC records of conversations, procedures where
defense counsel offices can require clients to complete forms indicating a lack
of desire for IMC, and post-trial *DuBay* hearings for additional factfinding.
On the contrary, our decision to disregard this waiver and consider the issue
is intended to highlight the importance of the right to an IMC and the im-
portance for TDC to document and, above all, scrupulously honor an ac-
cused's request for IMC by forwarding it in the appropriate manner.

### 3. The doctrines of res judicata and collateral estoppel

The assertion of error we are addressing in this opinion—whether Appel-
lant's TDC was ineffective for failing to properly submit his IMC request—

---

[32] *Id.* (emphasis in original).

was not an issue decided by our superior court. Thus, the related doctrines of *res judicata* [claim preclusion] and collateral estoppel [issue preclusion] do not prevent our review of this issue. The general rule of *res judicata*:

> applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, *the parties to the suit and their privies are thereafter bound.*[33]

Collateral estoppel—though most often in a criminal context involving double jeopardy—"means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the *same parties* in any future lawsuit."[34]

Based on *Chin* and the text of Article 66, we invoke our statutory authority to disregard Appellant's in-court waiver of his right to IMC. As a matter of law, CAAF has spoken on Appellant's waiver. It is a waiver. We have no authority to conclude otherwise, and we do not do so here. CAAF did not, however, address whether Appellant's TDC committed IAC. Under its Article 67 statutory authority, once CAAF found a waiver on IMC, the underlying IAC issue was moot, but not necessarily resolved. CAAF did not proceed to resolve the underlying IAC issue and bar this Court from resolving the issue, or bar Appellant from asking this Court to resolve it.

Under Article 66, we do have authority to disregard the waiver, whether we initially decided it was a waiver upon Appellant's original review with this Court, or whether CAAF has held that as a matter of law it is a waiver. Article 66's authority for a CCA to disregard waiver does not distinguish whether the waiver determination is organic or from above.

The doctrines of res judicata and collateral estoppel are limited here to our complete acquiescence to CAAF's legal holding that Appellant's in-court colloquy effected a knowing, intelligent waiver. We find it axiomatic that CAAF does not have the authority to remove a portion of Article 66—the power to disregard waiver—which it does not itself possess in its own statu-

---

[33] *Commissioner v. Sunnen,* 33 U.S. 591, 597 (1948) (quoted and emphasis added in *United States v. Doughty*, 34 C.M.R. 320, 326-27 (C.M.A. 1964)).

[34] *United States v. Hicks*, 24 M.J. 3, 7 (C.M.A. 1987) (citing and quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)) (emphasis in the original).

tory grant of authority under Article 67. Rather than in any way question our superior court's legal holding, we merely reserve for ourselves the authority that Congress has bestowed upon us.

Likewise, the doctrines of res judicata and collateral estoppel do not prohibit us from disregarding the waiver because we did not discuss *Chin* in our initial 2018 opinion in this matter. In our first review of this case we did not explicitly invoke our authority to disregard the waiver. Instead, as CAAF made clear, we incorrectly decided as a matter of law that Appellant's waiver was invalid because it was not a knowing and intelligent waiver and it was "based on the fallacy of [his] belief."[35] "To the extent that [Appellant] waived his right to request CPT TN as an IMC, he relied on an erroneous representation of CPT TN's unavailability."[36] Because this Court has never made a final judgment or holding on the merits of whether Appellant's waiver should be disregarded under *Chin*, there is nothing for this Court to be bound by in that respect, either.

With that, we turn to whether TDC was ineffective in failing to forward Appellant's IMC request.

## B. Appellant's TDC was Deficient in Failing to Submit Appellant's Request for CPT TN as IMC

### 1. Standard of review and the law

We review claims of ineffective assistance of counsel de novo.[37] In *Strickland v. Washington*, the Supreme Court laid out the test that guides our analysis. In order to prevail on such a claim, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[38] The appellant bears the "burden of establishing the truth of factual matters relevant to the claim."[39] Only after an appellant has met his burden and has demonstrated both deficiency and prejudice

---

[35] *United States v. Cooper*, No. 201500039, 2018 CCA LEXIS 114 at \*37 (N-M. Ct. Crim. Ap. Mar. 7, 2018) (unpublished).

[36] *Id.* at \*36.

[37] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[38] *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

[39] *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009).

can we find in the appellant's favor on an ineffective assistance of counsel claim.

### 2. The TDC was deficient in failing to route the IMC request

We agree with the *DuBay* military judge that the TDC failed to properly route Appellant's IMC request for CPT TN. We review a military judge's findings of fact at *DuBay* hearings under a clearly erroneous standard and the conclusions of law de novo.[40] Though the *DuBay* military judge found both the TDC and the IMC "credible," he found that certain prior consistent statements in Appellant's social media made a circumstantial case that he was under the impression he could not have CPT TN as his IMC. We see nothing in the *DuBay* hearing that would cause us to question this finding of fact.[41]

When reviewing an appellant's claim that his TDC's performance was ineffective, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[42] This presumption must be rebutted by showing that a specific error, or errors, were "unreasonable under prevailing professional norms."[43]

A military accused has a statutory right to IMC under Article 38, UCMJ. Rule for Courts-Martial [R.C.M.] 506 delineates the procedure for making an IMC request and authorizes service Secretaries to prescribe more detailed procedures. In the Navy, pursuant to the Naval Legal Service Command Manual, TDC "*shall* ensure IMC requests are forwarded per R.C.M. 506(b) . . . . All IMC requests will be submitted in writing. IMC requests for courts-martial will be routed via the trial counsel to the convening authority."[44]

---

[40] *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997).

[41] *United States v. French*, 38 M.J. 420, 425 (C.A.A.F. 1993) (citing *Parts and Electric Motors Inc. v. Sterling Electric, Inc.* 866 F.2 228, 233 (7th Cir. 1988) (finding that under the clearly erroneous standard, it must be "more than just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish").

[42] *Strickland*, 466 U.S. at 689.

[43] *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citing *United States v. Cronic*, 466 U.S. 648 (1984)).

[44] Dep't of the Navy, Commander Naval Legal Service Command Instr. 5800.1G, Naval Legal Service Command (NLSC) Manual, para. 1006.a. (Feb. 25, 2013) (emphasis added).

Because CPT TN was not among those designated as "not reasonably available" [trial counsel, general and flag officers, military judges, *et al.*] under R.C.M. 506(b)(2), the CA was obligated to forward such an IMC request to CPT TN's commander, who would then determine whether CPT TN was "reasonably available" to act as Appellant's IMC. But none of the time-honored procedures in this well-known statutory right can be put into motion—at least in the context of TDC's fulfillment of her duties to her client—unless she takes the simple administrative step of routing the IMC request.[45] We find the oversight to not route the IMC request for formal action as required was "unreasonable under prevailing professional norms."[46] As such, the TDC's performance was deficient.

### 3. Captain TN was reasonably available

The *DuBay* military judge also made a finding of fact and conclusion of law that CPT TN was reasonably available. Again, we review the findings of fact under an abuse of discretion standard and will only overturn them if they are clearly erroneous or unsupported by the record.[47] We review the conclusions of law de novo.[48]

Under the relevant Army Regulation [AR] for all National Guard attorneys executing orders under Title 10 [AR 27-10], CPT TN was presumed "reasonably available" unless he was specifically included in a list of those deemed unavailable, similar to R.C.M. 506. He was not included on the unavailable list.

As the *DuBay* judge found, the individual who would have made the availability determination was a Lieutenant Colonel from the California Army National Guard. His affidavit for the *DuBay* hearing indicated he would have considered CPT TN available and would have granted the IMC request. Captain TN's legal chain of command at JTF-GTMO sharply disagreed with this assessment, arguing that it, and not the California National Guard commander, would have made the determination of CPT TN's availability. And the JTF-GTMO determination would have been that CPT TN's Freedom of Information Act duties would have been too cumbersome to allow

---

[45] The Rule also allows for a military accused to submit an IMC request on his own behalf.

[46] *Scott*, 24 M.J. at 188 (citing *Cronic*, 466 U.S. 648).

[47] *Wean*, 45 M.J. at 463.

[48] *Id.*

for him to be available as IMC. However, the record also indicates that CPT TN rotated out of JTF-GTMO, but remained on active duty, about one month prior to Appellant's court-martial. We find no abuse of discretion in the *DuBay* military judge's findings of fact and conclusions of law concerning CPT TN's availability. Moreover, CPT TN already had an attorney-client relationship with Appellant concerning the alleged sexual assault for which he was being court-martialed. We concur that, if forwarded properly, the IMC request would have been approved.

Having found deficiency on the part of the TDC in failing to route an IMC request for a reasonably available counsel who would have been approved, we now turn to whether Appellant was prejudiced by the denial of his right to an IMC.

## C. Appellant Was Prejudiced by Being Deprived of His Statutory Right to IMC

### 1. This violation is statutory rather than constitutional

The right to IMC is found within Article 38, UCMJ. As we pointed out in *Cooper I*, this right predates the UCMJ and entitles a military accused to the right to a "military counsel of his own selection if that counsel is reasonably available."[49] As we discussed above, R.C.M. 506 and various service regulations deem whether a military counsel is per se unavailable, by what standards a military counsel is available, and who makes that determination.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall have the right . . . to have the Assistance of Counsel for his defence."[50] When combined with the Constitution's Due Process Clause, several facets of criminal prosecutions emerge, including (1) one where assistance of counsel has been denied entirely; (2) where an accused who does not require appointed counsel has been denied his "choice of counsel"; and (3) where an accused has been denied the "effective assistance of counsel." The first two of these constitutional violations do not require a case-by-case, and thus wholly speculative, prejudice analysis. This makes sense because the presumption of regularity and faithfulness to the Sixth Amendment's guarantee should not be applied when an accused has had either no lawyer for his trial or has somehow been prevented from having

---

[49] *Cooper*, 2018 CCA LEXIS 114 at *14-15 (citing *United States v. Gnibus*, 21 M.J. 1, 5-7 (C.M.A. 1985)).

[50] U.S. CONST. amend. VI, cl. 7.

the counsel he chooses (indigence aside) to defend him. As we touched on above, the analysis is different for IAC because appellate courts have a record to review and can consider the errors, weigh them against prevailing standards of minimum competence of counsel, and consider the overall impact on the trial in light of the constitutional right. We mention all this to state that, despite the similarity in considering the prejudice to an accused in the denial of the Sixth Amendment right to "choice of counsel" and the prejudice to an accused in the denial of the statutory right to IMC, they are different interests being violated. One is a constitutional deprivation of Due Process that violates an accused's Sixth Amendment right to counsel and is a structural error; the other is statutory.

In *United States v. Gonzalez-Lopez*,[51] the Supreme Court addressed the right to counsel of choice. It held that when a non-indigent accused who did not need assignment of counsel was prohibited from being represented by the attorney he wanted, this worked a "violation that was not subject to harmless-error review."[52] Such a deprivation of a fundamental right was a "structural defect"[53] possessing "consequences that are necessarily unquantifiable and indeterminate."[54] The Court added that any harmless-error analysis "in such a context would be a speculative inquiry into what might have occurred in an alternate universe."[55]

But the violation of the statutory right to IMC is reviewed differently from a structural defect such as the deprivation of choice of counsel or other constitutional errors. Rather than the "harmless beyond a reasonable doubt" standard used for constitutional errors, we test for prejudice under Article 59(a), UCMJ, and consider whether Appellant's substantial rights were materially prejudiced.[56] However, in cases alleging violation of an appellant's right to IMC, depending on the circumstances, courts have sometimes declined to test for prejudice and not speculated on the amount of prejudice to the proceeding.

---

[51] 548 U.S. 140, 144 (2006).

[52] *Id.* at 143-44.

[53] *Id.* at 148.

[54] *Id.* at 150 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)).

[55] *Id.*

[56] *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019) (holding that material prejudice under Art. 59 must be understood by reference to nature of violated right).

*2. Military courts may presume prejudice when IMC is either not properly forwarded or is improperly denied*

Military courts have long been reviewing cases where the denial of IMC is alleged to have materially prejudiced an appellant's substantial rights. In 1967, in *United States v. Hartfield*,[57] CAAF's predecessor court, the Court of Military Appeals [CMA], set aside the conviction of an appellant who had pleaded guilty to "a number of offenses."[58] The appellant requested a particular legal officer for his IMC who also happened to be a member of the CA's staff. Because the requested IMC was a member of the CA's staff, the CA's staff legal officer determined for himself—as a "routine action"—that the requested IMC was not reasonably available. He did not forward the request to the CA. The CMA set aside the findings and sentence because a decision on an IMC request is to be made, personally, by the CA, and the appellant's inaction at trial concerning his IMC was predicated on the false premise that the CA had personally denied his request. Citing to a 1942 Supreme Court case, *Glasser v. United States*,[59] the CMA held that "the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."[60]

In *United States v. Beatty*[61]—decided some 20 years after *Hartfield*—the CMA again set aside the findings and sentence when an IMC request was improperly denied. In *Beatty*, the appellant had an IMC for his first trial, which resulted in a guilty plea. When the CA found the appellant was improvident to his pleas, a re-hearing was ordered, this time with additional charges. When the appellant asked the military judge for a new IMC for the new trial, his request was denied because he was only entitled to a single IMC. The appellant was only allowed his original IMC—now detailed as his defense counsel—in the new trial with the new charges. The appellant elected to defend himself and his counsel remained with him at counsel table. However, during the re-trial, his detailed counsel "conducted the defense."[62]

---

[57] 38 C.M.R. 67 (C.M.A. 1967).

[58] *Id.* at 67.

[59] 315 U.S. 60 (1942).

[60] *Hartfield*, 38 C.M.R. at 68 (citing *Glasser*, 315 U.S. at 76).

[61] 25 M.J. 311 (C.M.A. 1987).

[62] *Id.* at 314.

The CMA held that the appellant was entitled to IMC for the additional charges on remand. While the procedural aspects were not as clear-cut as *Hartfield*, the CMA, citing a case from the U.S. Court of Appeals for the Sixth Circuit, held that "deprivation of a statutory right to counsel cannot be analyzed in terms of specific prejudice but, instead, mandates automatic reversal."[63]

In *United States v. Allred*,[64] we set aside the findings and sentence when an appellant's IMC request was improperly denied. The appellant had charges preferred against him and was assigned a defense counsel. The charges were withdrawn when the appellant was hospitalized. When he was released from the hospital, the CA appointed a new defense counsel because the original counsel was scheduled to transfer out of the area. The appellant requested his original defense counsel as IMC, but the commanding officer denied it because the appellant did not have an existing attorney-client relationship and the counsel was not reasonably available. We found that "defense counsel are not fungible items" and that the attorney-client relationship was improperly severed. We declined to engage in "nice calculations to the existence of prejudice"[65] when an attorney-client relationship is severed without good cause and "presumed prejudice arising from the denial of his statutory right to counsel of his own selection. Arts. 38(b)(3)(B) and 59(a), UCMJ."[66]

But more recently, we declined to presume prejudice for the alleged deprivation of IMC. In a 2013 unpublished opinion in *United States v. Johnson*,[67] the appellant made some meritless allegations that he was denied IMC. While the appellant had some initial conversation with his TDC about the possibility of requesting IMC, we eventually found that this, "at best, reflect[ed] a miscommunication."[68] We conducted IAC analysis under *Strick-*

---

[63] *Id.* at 316 (citing *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985) (on remand from Supreme Court, holding petitioner was not required to demonstrate *Strickland* prejudice from District Court judge's interference with Sixth Amendment choice of counsel right)).

[64] 50 M.J. 795, 801 (N-N. Ct. Crim. App. 1999).

[65] *Id.* (quoting *United States v. Baca*, 27 M.J. 110, 119 (C.M.A. 1988)).

[66] *Id.* (citing UCMJ arts. 38(b)(3)(B), 59(a)).

[67] No. 201200379, 2013 CCA LEXIS 784 (N-M. Ct. Crim. App. Sept. 30, 2013) (unpublished).

[68] *Id.* at *9.

*land* and found no prejudice. However, we did find the "scenario [w]as testable for prejudice."[69] We did so because the military judge found both counsel were competent, and our review of the record convinced us the TDC "performed competently in the face of overwhelming evidence of the appellant's guilt."[70]

In a footnote in *Johnson*, we recognized that "[u]nder circumstances distinguishable from this case, military courts sometimes do not test improper denial of an IMC request for prejudice" and cited to *Hartfield*, but cautioned that *Hartfield* quoted the Supreme Court in *Glasser*, which pre-dated *Strickland*. But then we cited *Allred*—a post-*Strickland* case—recognizing that it also did not test for prejudice. We found that *Johnson* and *Allred* were distinguishable because the latter was a wrongful interference with an existing attorney-client relationship that expressed itself as a denial of IMC.

### 3. We decline to test for prejudice

With our precedent and that of our superior courts in mind, we decline to test for prejudice after finding Appellant's statutory right to IMC was violated. While we have elected to test for prejudice under *Strickland* in one case, in many other cases—some occurring after *Strickland*—we have presumed prejudice. One factor that weighs heavily on whether to presume prejudice is whether an existing attorney-client relationship was severed or effectively severed. We also consider the overall strength of the Government's case, the nature of who denied the IMC request, and how it occurred.

The totality of the circumstances here include (1) the existence of an attorney-client relationship by a counsel who was reasonably available and wanted to represent Appellant at his court-martial; (2) the fact that Appellant was effectively prevented from pursuing his IMC due to a deficiency by his own TDC; and (3) a trial in which the Government's case was not overwhelming, but appeared to be the kind of "he said-she said" sexual assault case where the difference between conviction and acquittal often lies in the margin. Under these circumstances, we find that "nice calculations to the

---

[69] *Id.* at *12.

[70] *Id.* at *13. The appellant had been charged and convicted, contrary to his pleas, of stealing funds from the Third and Second Class Petty Officers Association aboard his ship, making a false official statement to an investigator about the theft, and obstructing justice by modifying an electronic record to make it appear the stolen funds had been transferred to another private organization onboard the same ship.

existence of prejudice"[71] are inappropriate for this manner of violation of Appellant's statutory right to IMC.

Given this presumption of prejudice, which the Government has not overcome, we conclude the second prong of *Strickland* is satisfied. The IMC request was not routed. It should have been. Had it been routed, it would have been approved and Appellant would have continued his pre-existing attorney-client relationship with CPT TN as his IMC. Under these circumstances, we find a "reasonable probability . . . sufficient to undermine confidence in the outcome."[72]

Assuming arguendo that we must not presume prejudice under these circumstances, we would defer to our prior decision in *Cooper I*. Rather than rehash what we said in detail, it suffices to say that the government was able to provide resources in Cuba to investigate the sexual assault, but was unable to provide resources for Appellant's defense. Appellant terminated an interview with NCIS to seek counsel. The Navy did not formally detail him TDC for five months, even after he sought assistance, but was turned away from the nearest Region Legal Service Office [RLSO] and also the Navy's regional Defense Service Office, Southeast. In the end, it was the government's deficiency in timely detailing TDC for Appellant that spurred his formation of an attorney-client relationship with CPT TN. And then his TDC, operating under the detailing authority of the government, frustrated the continuation of that same relationship. While we still believe it is "folly of trying to compare the legal representation an accused might have received with desired counsel to the representation the accused actually received,"[73] we also still believe that Appellant suffered material prejudice in both the preparatory stages of his court-martial and at trial when his IMC request was never drafted and forwarded to CPT TN's chain-of-command for consideration and approval.

### D. Legal and Factual Sufficiency Review

In 2018, this Court set aside the convictions and sentence in Appellant's case and ordered the case remanded for a new trial. In that opinion, despite remanding for a new trial, we elected to discuss the factual sufficiency of Appellant's convictions. We should not have done this. Given that we are

---

[71] *Allred¸* 50 M.J. at 801.

[72] *Strickland*, 466 U.S. at 694.

[73] *Cooper*, 2018 CCA LEXIS 114 at *44.

again remanding the case for a new trial, we will decline to discuss the legal and factual sufficiency of Appellant's convictions.[74]

Article 66, UCMJ, authorizes us to approve only findings that are correct in law and fact. This requires a somewhat bifurcated review of a court-martial. We look first to whether the convictions are legally and factually sufficient. If they are, then we evaluate any alleged legal errors to determine whether there is an error and, if so, what an appropriate remedy might be.

Any case that is remanded for a new trial must by implication have its findings—on the face of a record containing some legal errors worthy of a remand—be legally and factually sufficient. If the findings were not legally and factually sufficient, we would be obligated to set them aside and dismiss them. Double jeopardy would bar a rehearing as to those legally or factually insufficient findings, and a remand for those particular findings would be a deprivation of an appellant's constitutional rights.[75]

Thus, the best practice for a service court of criminal appeals is to simply not comment on the legal and factual sufficiency of findings in a case where a remand is ordered. The first reason is practical. The record is flawed enough in some way for a remand, so evaluating the legal and factual sufficiency is somewhat distorted through the prism of the legal error. The second reason is fairness to an appellant. His parting gift from a CCA should not be an evaluation by three [or more] appellate military judges of the strengths and weakness of the Government's case against him. We ought to remain silent. Here, we choose to remain silent. Appellant and the Government must presume we find the convictions legally and factually sufficient, but we only do so on the face of a record where Appellant's substantial rights were materially prejudiced. Had we found otherwise, we would be obligated to say so and to take appropriate action.

---

[74] We decline to now settle the question of whether this Court is bound to review for factual sufficiency when a case is remanded from CAAF and the review is not necessary for our resolution of this case. Out of an abundance of caution, we have re-examined, de novo, the factual sufficiency of Appellant's convictions. The result is the same.

[75] *See Conley*, 78 M.J. at 751.

## III. CONCLUSION

The findings and sentence are **SET ASIDE AND DISMISSED** and the record is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority with authority to order a rehearing.

Judge DEERWESTER concurs.

CRISFIELD, Chief Judge Emeritus (dissenting):

I respectfully dissent based on three concerns regarding the majority opinion. First, I believe that the Court of Appeals of the Armed Forces' [CAAF] opinion and order remanding the case to this Court constitutes res judicata which estops further Article 66(c) review of the issue decided by CAAF. Second, I believe that the standard articulated by the majority for review pursuant to *United States v. Chin*[1] is unwise. Finally, I believe that the factual predicate relied upon by the majority for its determination of prejudice is clearly contradicted by the court-martial record of trial and *DuBay*[2] hearing.

While *Chin* recognizes that courts of criminal appeals possess extraordinary discretion in reviewing court-martial errors notwithstanding waiver of those errors, we ordinarily exercise that authority with no intervening appellate decisions. That is not the case here. This Court has already rendered a decision on the issue reviewed de novo by the majority today. More importantly, CAAF has reviewed this Court's prior decision and overturned it, remanding the case to us with clear and specific direction regarding the scope of our review on remand. CAAF limited our current review to the assignments of error that were not addressed in our initial opinion:

> That leaves unanswered other issues the [Navy-Marine Corps Court of Criminal Appeals] determined were mooted by its decision that [Appellant] was denied his statutory right to [individual military counsel]. *See Cooper*, 2018 CCA LEXIS 114, at *3 n.3, 2018 WL 1178847, at *1 n.3. We leave those issues for the CCA to resolve on remand.[3]

I cannot read CAAF's opinion as authority for us to review, de novo, assignments of error related to Appellant's desire for an individual military counsel. Those issues are now res judicata.

Secondly, I am concerned about the guidelines that the majority describes for when to invoke *Chin*. Admittedly, neither Article 66(c) nor *Chin* provides any guidance for courts of criminal appeals to use in determining when to use its authority to review a clearly waived issue. Therefore, I do not claim that the majority is legally incorrect, but simply disagree with the criteria that it

---

[1] 75 M.J. 220 (C.A.A.F. 2016).

[2] 37 C.M.R. 411 (C.M.A. 1967).

[3] *United States v. Cooper*, 78 M.J. 283, 287 (C.A.A.F. 2019).

uses. It states that this Court is on the safest grounds in invoking *Chin* when considering errors that "originate from something uniquely military." It approvingly cites the Army Court of Criminal Appeals' opinion in *United States v. Conley*, 78 M.J. 747 (Army Ct. Crim. App. 2019), which similarly articulated a narrowing criterion of whether a waived error was "born from uniquely military origins." It is unclear to me why that would be an important factor. Why would a military accused need *less* protection from this Court for a universal criminal justice matter, as opposed to a uniquely military matter?[4] Giving weight to this factor could lead to strange results. This Court could disregard a waiver where an appellant had been ably represented by detailed military counsel but denied his right to individual military counsel [IMC], but uphold a waiver where an appellant had been entirely denied his Sixth Amendment right to assistance of counsel.

I would propose we exercise our *Chin* authority without regard to whether or not the error results from a matter unique to the military. I would also propose that we utilize a strong presumption that a waiver will not be overridden. With that in mind here is my suggested guideline for when the Navy-Marine Corps Court of Criminal Appeals should invoke *Chin* to find error notwithstanding a knowing and intelligent waiver of the issue by the appellant: *The error results in a substantial injustice which has a direct and provable prejudicial impact on a finding or sentence and which cannot be adequately addressed by means other than action by the court.* I would further suggest that *the injustice rise to the level that it would shock the conscience.*

Admittedly, the facts of *Chin* itself would not pass this test. There was no injustice, let alone a substantial injustice, involved in *Chin,* merely a drafting issue that resulted in an unreasonable multiplication of charges. The appellant felt the issue was slight enough that he bargained it away in his pretrial agreement in order to get a better sentencing deal from the government. The error was so lacking in prejudice that the Air Force Court of Criminal Appeals provided no sentencing relief whatsoever to the appellant.

I believe that there is a value to the doctrine of waiver and that it should be difficult to overcome. There is a value to generally holding that if litigants do not raise an issue at an appropriate time, they may not be able to raise the

---

[4] Perhaps it should be just the opposite. Perhaps courts of criminal appeals should be *more* protective of general criminal justice issues than uniquely military ones because military authorities exercising court-martial powers are more likely to be attuned and responsive to criminal justice issues unique to our court-martial system, such as the requirements of good order and discipline.

issue later, even if they would have been victorious had they raised the issue in a timely manner. I also believe that there should be an articulable standard for when an appellate court is not going to enforce waiver in order to provide some predictability to litigants. If there is no standard for when a court of criminal appeals should deviate from the doctrine of waiver then there really is no doctrine. Therefore, this Court should articulate the standard it will use to invoke *Chin* and override a valid waiver. I applaud the majority for articulating a standard, but I feel that we could do better.

After invoking *Chin*, the majority reexamines whether Appellant was denied his statutory right to IMC, but their analysis is exactly the same as it would be had Appellant not waived the issue. There is no analysis regarding what it is about this particular case that requires our disregard of Appellant's waiver in order for us to fulfill our duty under Article 66(c). That is the missing link that requires elucidation and poses potential problems for appellants, trial and defense counsel, and even the judges of the Court of Appeals for the Armed Forces. Unfettered discretion at the courts of criminal appeals injects uncertainty about the binding effect of waivers at the trial level. How can the government know if it will get a lasting benefit from a waiver provision in a plea agreement if the CCA is free to disregard the waiver on appeal? That kind of uncertainty will tend to lower the value of such waivers and reduce an accused's bargaining power when seeking a deal. It also poses problems for CAAF judges who may justifiably feel that their holdings are entitled to enforcement by the CCAs. If a CCA can side-step CAAF's finding of waiver by the mere incantation of *Chin*, without providing any explanation of what extraordinary circumstance warrants its consideration of the waived issue, then CAAF is likely to re-look at *Chin*, most likely with a view to more explicitly describing Article 66(c)'s limits.

Finally, I believe that contrary to the *DuBay* judge and majority's finding of fact, the record clearly shows that Captain [CPT] TN would *not* have been determined to be reasonably available as an IMC had such a request been submitted. This is a critical issue because if the IMC request would have been denied, then there is no possible prejudice to Appellant and the assignment of error is meritless.

The majority holds that the *DuBay* judge did not abuse his discretion in finding that CPT TN's command for IMC purposes was the California National Guard. That is the appropriate standard when we review a military judge's findings of fact.[5] However, I believe that the record clearly establishes

---

[5] *See United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997).

that CPT TN's command for IMC purposes while deployed to Guantanamo Bay was Joint Task Force-Guantanamo Bay [JTF-GTMO] and that the *DuBay* judge abused his discretion in reaching the opposite finding. Appellant's Title 10 activation orders administratively assigned him to the 40th Infantry Division Headquarters Support Company, Forward, but the command that he was working for, and who had the authority to give him day-to-day direction and tasking, was clearly JTF-GTMO.

CPT TN submitted a declaration in which he stated:

> I was deployed to Joint Task Force Guantanamo Bay (JTF-GTMO) in support of Operation Enduring Freedom from November 19, 2013 through August 20, 2014. . . . While assigned to JTF-GTMO, I was the Deputy of Administrative Law in the Staff Judge Advocate's office. My responsibilities also included being the Freedom of Information Act (FOIA) Action Officer, Chief of JTF Legal Assistance Office, and Officer in Charge (OIC) of the International Committee of the Red Cross (ICRC) Detainee Phone Call Program.[6]

These positions were all within the JTF-GTMO command structure. Captain TN did not say a word in his declaration, or anywhere else on the record, about any duties or positions he held in the headquarters support company. That company existed to provide administrative support and an administrative chain of command to 40th Infantry Division soldiers assigned to duty at JTF-GTMO. There is no evidence in the record that CPT TN occupied any billet, possessed any title, or performed any duties or functions whatsoever in the headquarters support company. It is clear that as between JTF-GTMO and the Army headquarters support company, the JTF had the overwhelming interest in CPT TN's tasking during his deployment to Guantanamo Bay.

The commander of the headquarters support company during CPT TN's deployment to JTF-GTMO from November 2013 to August 2014 declared that if he had been presented with an IMC request for CPT TN, he would have approved it.[7] The declaration provides no evidence that CPT TN performed any duties within the company. On the other hand, the staff judge advocate for JTF-GTMO, CPT TN's supervisory judge advocate, declared that if he had been presented with an IMC request he would have recommended denial to

---

[6] App. Ex. XXII-A at 1-2.

[7] App. Ex. IV-A.

the JTF commander.[8] The staff judge advocate notes that CPT TN worked as a Freedom of Information Act [FOIA] attorney for JTF-GTMO and that this was an important and time-consuming duty at the joint task force. It is hardly surprising that the task force would not have wanted to release CPT TN from his duties given the criticality of FOIA responses to an organization under as much public scrutiny as JTF-GTMO. Appellant, who worked with CPT TN on FOIA responses, himself noted the importance of this duty and the heavy workload that it entailed. Appellant testified that he and CPT TN often worked twelve to fourteen-hour shifts together.[9]

The importance of the requested counsel's duties and their workload are fair considerations by a commander who needs to make a reasonable availability determination, even when that counsel has a prior attorney-client relationship with the accused. Had an IMC request been made for CPT TN the governing service regulation would have been Army Regulation 27-10. Paragraph 5-7 of that regulation permits a commander making a reasonable availability determination to consider "the requested counsel's duty position, responsibilities, and workload."[10]

The fact that CPT TN transferred from his assignment with JTF-GTMO and returned to the California National Guard one month prior to the start of Appellant's trial and that the California National Guard would have approved the IMC request at that time is irrelevant to this issue. Had Appellant's military defense counsel submitted an IMC request when the majority says she should have, CPT TN's commander, the commander of JTF-GTMO, would have been the one to make the availability decision.[11] All evidence

---

[8] App. Ex. XXXVII-A.

[9] *DuBay* Hearing R. at 77.

[10] Dep't of the Army, Reg. 27-10, Legal Services: Military Justice, para. 5-7.d.(1) (May 11, 2016). The Army Regulation goes on to state: "if an attorney-client relationship exists between the accused and the requested counsel regarding matters that relate solely to the charges in question, the requested counsel will ordinarily be considered available to act as individual military counsel." *Id.* para. 5-7.e. This provision would not have applied since CPT TN's attorney-client relationship with Appellant was based on a legal assistance matter that CPT TN was working on for Appellant.

[11] Appellant testified at the *DuBay* hearing that CPT TN was working at the JTF when Appellant asked for him to be his IMC:

> Q.   Okay. Now, at that time when you requested [CPT TN], what was your relationship at that point with [CPT TN]?

indicates that he would have denied the request.[12] There is no question that such a decision would have been lawful. Therefore, this assignment of error should fail at the second prong of *Strickland*.

For these reasons, I respectfully dissent.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

> A.    I had transferred to a different shop, sir. A—he was on
>        the JTF side. . . .

*DuBay* Hearing R. at 76.

[12] If the *DuBay* military judge and the majority are correct that CPT TN's headquarters support company commander was the correct authority to make the IMC decision, then it was irrelevant how much time CPT TN had left to serve with JTF-GTMO. The headquarters support company would have approved the request and CPT TN would have ceased all duties with JTF-GTMO to assume his full-time duties as Appellant's IMC. Yet, both the *DuBay* military judge and majority positively cite the fact that CPT TN would have detached from JTF-GTMO a month before Appellant's trial was scheduled to start.